## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DENNIS E. PARKSTONE, III,** : | |
| : | |
| Plaintiff, : | |
| : | C.A. No. |
| v. : | |
| : | |
| **CHRISTOPHER A. COONS,** : | |
| individually and in his official capacity; : | |
| **RICHARD PRZYWARA,** individually : | **JURY TRIAL DEMANDED** |
| and in his official capacity; and : | |
| **NEW CASTLE COUNTY,** a municipal : | |
| corporation, : | |
| : | |
| Defendants. : | |
| : | |

## COMPLAINT

## PARTIES

1.  Dennis E. Parkstone, III ("Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware, and currently resides at 300 Brookside Drive, Wilmington, DE 19804. He was employed by New Castle County in the Special Services Department continuously from February 16, 1970 until his termination on August 18, 2005. At all times material hereto, he has been a diligent, honest and loyal employee who always performed his job in an exemplary manner.

2.  Defendant Christopher A. Coons ("Coons") at all times material hereto, has been the County Executive of New Castle County. He is sued in his individual and official capacities for retaliatory actions which were taken against Plaintiff. Coons is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

3. Defendant Richard Przywara ("Przywara") at all times material hereto, has been the General Manager of Special Services for New Castle County. He is sued in his individual and official capacities for retaliatory actions which were taken against Plaintiff. Przywara is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

4. Defendant New Castle County ("NCC") is a municipal corporation under the laws of the State of Delaware. Defendant is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

## JURISDICTION

5. Jurisdiction is founded on the existence of a question arising under federal statute 42 U.S.C. §1983 and the First Amendment to the Constitution of the United States that protects individuals' rights to freedom of political association. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal law, which prohibits adverse action against employees for exercising their federally protected right to freedom of political association and on the basis of retaliation.

6. Plaintiff's common law claims for Breach of the Implied Covenant of Good Faith and Fair Dealing and Invasion of Privacy are brought pursuant to the pendent jurisdiction of this Court.

## FACTUAL BACKGROUND

7. Plaintiff began employment with NCC on or around February 16, 1970. Prior to his termination on August 18, 2005,[1] Plaintiff was employed with NCC for over thirty-five (35) years.

---

[1] NCC notified Mr. Parkstone on August 18, 2005 that his employment was terminated. However, that termination notice indicated that the termination was retroactive to July 28, 2005.

2

8.  Plaintiff worked as a Laborer I from February 16, 1970 until sometime in 1971 when he was promoted to Laborer II.

9.  In 1972, Plaintiff was promoted to Motor Equipment Operator I.

10. He served in this capacity until 1975 when he was promoted to Motor Equipment Operator II.

11. In 2001 he was promoted to Crew Chief I.

12. He remained employed in that capacity until his employment with New Castle County was terminated on August 18, 2005.

13. Plaintiff was also very active in his union, AFSCME[2] Local 459 ("Local Union"). The first position to which he was elected was Shop Steward in 1974.

14. He was elected Vice-President of the Union in 1980 and then elected President in 1981, 1982, 1984, 1990, 1992, 1994, 1996, 2002 and 2004.

15. In addition, Plaintiff was elected as Recording Secretary for the Union in 1998 and 2000.

16. Plaintiff was politically supportive of Tom Gordon ("Gordon") when Gordon successfully ran for County Executive in 1996 and 2000. He also supported Gordon during his two terms as County Executive.

17. During the Gordon Administration, Sherry Freebery ("Freebery"), served as the NCC Chief Administrative Officer.

18. Plaintiff also cast his political support for Freebery.

19. In this regard, Plaintiff worked at the election polls encouraging support for Gordon and Freebery ("the Gordon/Freebery Administration") and handing out flyers on their behalf. He also made telephone calls for the Gordon/Freebery Administration

---

[2] American Federation of State, County, and Municipal Employees

3

urging voters to support that Administration and provided transportation to voters to and from the election polling places.

20. Gordon was ineligible to run for another term as County Executive beginning in 2004.

21. As such, Freebery ran for the County Executive post as did Defendant Coons.

22. Plaintiff was also active in Freebery's campaign and openly supported her in the same as he supported the Gordon Freebery Administration as outlined above in ¶ 19.

23. In the course of Gordon's two terms as County Executive, as well as during the course of the race between Coons and Freebery for County Executive, a bitter rivalry developed between the Gordon/Freebery camp and the Coons camp.

24. Many County employees were identified with the candidate for whom they cast their political support.

25. During the time period in which Freebery and Coons were campaigning, Plaintiff was the President of the Local Union to which the hourly NCC employees employed in the Special Services Department belonged, AFSCME.

26. During her campaign, Freebery requested permission from Plaintiff to speak at a union meeting. That request was granted by Plaintiff.

27. Coons defeated Freebery in the Democratic Primary Election and went on to succeed Gordon as County Executive.

28. Prior to the Coons Administration winning the Primary Election, Plaintiff encountered no problems in his employment and was subject to no disciplinary actions.

29. However, shortly after Coons' victory over Freebery, Plaintiff began to be retaliated against for his support of Gordon and Freebery.

30. Specifically, following Coons election, John Carney, Lieutenant Governor for the State of Delaware ("Carney"), telephoned Plaintiff and asked why Plaintiff invited Freebery to speak at the Local Union meeting but did not ask Coons to speak.

31. Plaintiff responded that Freebery had not been *invited*; she made a request to speak.

32. Carney then asked if Coons could speak at a union meeting now that he had won the Primary Election. Plaintiff replied, "All he has to do is ask."

33. Another NCC employee, Tom Baliccio, a Coons supporter, called Plaintiff and requested that Coons be permitted to speak at the next Union Meeting.

34. Plaintiff granted that request, but also granted a request to have the Republican candidate for County Executive, Chris Castagno ("Castagno"), to speak at the same meeting.

35. Coons was very unhappy about appearing at the same meeting with Castagno.

36. Upon information and belief, Coons was unhappy with and blamed Plaintiff for first permitting Freebery to speak at the Union meeting and then for scheduling Castagno to speak at the same meeting.

37. During the Gordon/Freebery Administration, Joe Freebery was the General Manager of Special Services, the arm of NCC for which Plaintiff also worked. Joe Freebery was also Sherry Freebery's brother.

38. One of Coons' first orders of business after he became County Executive was to terminate Joe Freebery's employment and appoint Defendant Przywara as "acting" General Manager of Special Services.

39. As President of the Local Union, Plaintiff was permitted to use a union computer.

40. This computer was the Union's property and located inside the Union's office at 100 New Churchman's Road, New Castle, DE 19720.

41. From time to time, Plaintiff received jokes via email and occasionally would forward some of those jokes to his friends. Plaintiff was never previously disciplined for forwarding jokes at any time during his employment for New Castle County.

42. Moreover, many other NCC employees receive jokes via email from other NCC employees and are not disciplined as severely or not disciplined at all for receiving and forwarding such jokes.

43. In or about February 2005, Plaintiff received a joke via email about a donkey from another NCC employee, Rich Seery.

44. Rich Seery was a Coons political supporter and actually worked for Coons as during Coons' campaign.

45. The joke was arguably in poor taste, but fairly innocuous. Plaintiff forwarded the joke to Ronnie Meadowcroft, Chris Natrin and several other NCC employees.

46. Shortly thereafter, J. Wayne Merritt ("Merritt"), Senior Manager for Special Services, approached Plaintiff and told him, "You can't be sending these jokes around. It could offend someone"

47. In or about early April 2005, Merritt and Jim Hendricks, Chief of Construction Support for NCC, pulled Richard Smallwood, Vice President of the Local Union, from his job site and demanded that he unlock the Local Union office.

48. Once inside, Merritt and Hendricks seized the Union computer and sent it away to have the information stored on it analyzed.

49. NCC had begun an "investigation" into Plaintiff's use of this computer ostensibly due to this otherwise innocuous email.

50. The computer was the Local Union's property and contained confidential information about Plaintiff, Local Union members, as well as the operations of the Local Union.

51. NCC had no right or authorization to unlawfully seize and/or analyze this computer or the contents stored on this computer.

52. Plaintiff was not the only individual who used the computer in question.

53. During this investigation, Plaintiff was questioned for three hours and this questioning was recorded by NCC.

54. In or about early May 2005, Plaintiff went to see Przywara. Przywara told Plaintiff that in the future, Plaintiff was to schedule all Local Union business with him before hand; that Plaintiff must tell Przywara what the business was; and that Plaintiff was not to be in the Local Union office unless he was first given permission by Przywara.

55. Despite these statements, the collective bargaining agreement between the Local Union and NCC states that the President of the Local Union is permitted to conduct Union business by simply informing NCC that he was conducting Union business. In other words, the President is not required to tell NCC the nature of the Union business.

56. In or about early May 2005, Mike Begatto ("Begatto"), Executive Director AFSCME Council 81, spoke to Coons and Przywara at a dinner party. Coons and Przywara stated that they were going to fire Plaintiff ostensibly over the computer issue. However, during that same conversation, Mr. Begatto persuaded them into imposing a twenty-five (25) or thirty (30) day suspension instead of termination.

57. On or about May 11, 2005, Merrit instructed Plaintiff to attend a meeting the next day regarding his punishment for the email situation. Merritt advised him that he must sign the suspension papers that would be presented to him at that meeting or he would be terminated on the spot.

58. On or about May 12, 2005, a meeting was held in which Plaintiff received a thirty (30) day suspension.

59. However, as a condition to receiving this suspension, Plaintiff was required to sign a Memorandum of Understanding prepared by NCC waiving certain rights and agreeing to other untrue representations.

60. Plaintiff, under duress and fearing that he would lose his job of thirty-five (35) years, had no choice but to sign the Memorandum of Understanding.

61. Prior to Plaintiff signing the Memorandum of Understanding, Przywara represented to Plaintiff that any and all other NCC employees who committed the same violation would receive the same punishment.

62. Likewise, the Collective Bargaining Agreement between the Local Union and NCC requires that all employees be treated equally.

63. Plaintiff relied on this representation when executing the Memorandum of Understanding.

64. While suspended, Plaintiff discovered that others had committed the same offense but were only given five-day suspensions.

65. These suspensions were in direct contravention to Przywara's covenant to treat all violators equally.

66. Furthermore, it was a violation of the Collective Bargaining Agreement as set forth above in ¶ 62.

67. In fact, the person who sent Plaintiff the donkey email in question, Rich Seery, initially received no suspension or punishment whatsoever.

68. Mr. Seery worked for Coons and was a Coons political supporter.

69. It was not until Plaintiff complained to NCC about Seery receiving no discipline that Seery received no punishment that he was eventually suspended.

70. However, Seery received a less severe punishment of only a five (5) day suspension and this suspension did not occur until September 2005.

71. Had Plaintiff not complained to NCC, it is unlikely that Seery would have been disciplined at all.

72. Plaintiff, upset over the inequity of the punishment that he received in comparison to the other violators, filed a grievance through the Local Union on June 28, 2005.

73. By letter signed by Przywara and dated July 11, 2005, NCC refused to consider Plaintiff's grievance.

74. NCC terminated Plaintiff from his employment on August 18, 2005, retroactive to July 28, 2005, after thirty-five (35) years of faithful service, ostensibly because Plaintiff attempted to file a grievance.

75. Plaintiff has exhausted all of his administrative remedies.

## COUNT I
### (First Amendment – Political Association)

76. Plaintiff repeats and realleges paragraphs 1 through 75 as set forth above.

77. Plaintiff's support and loyalty to Gordon and Freebery was an act of political association protected by the First Amendment.

78. At all times Defendants knew Plaintiff was supportive and loyal to Gordon and Freebery; Defendants' rival political faction.

79. Defendants' respective positions in the local government place them in a position of power over Plaintiff.

80. Defendants attempted to use the power of their offices to retaliate against Plaintiff for his political support and loyalty to Gordon and Freebery.

81. Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendant's decision to launch the "investigation" into Plaintiff's forwarding of the donkey joke.

82. But for Plaintiff's political association with Gordon and Freebery, Defendants would not have conducted such an investigation.

83. Defendants' actions taken against Plaintiff constitute a constitutional violation of his right to political association.

10

84.  The right to political association is clearly established.

85.  Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendants' decision to punish Plaintiff more harshly than other employees who committed similar violations.

86.  But for Plaintiff's political association with Gordon and Freebery he would not have been punished or, would have been punished less severely.

87.  Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendants' decision to terminate Plaintiff.

88.  But for Plaintiff's political association with Gordon and Freebery he would not have been terminated.

89.  A reasonable officer in Coons', or Przywara's position would or should know that their actions taken against Plaintiff for his political association are prohibited.

90.  Political affiliation or association is not an appropriate requirement for the effective performance of Plaintiff's job. Plaintiff's position as Crew Chief I did not fall within the exception set forth in *Elrod v. Burns*, 427 U.S. 347 (1976); and *Branti v. Finkel*, 445 U.S. 507 (1980).

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

91.  Plaintiff repeats and realleges paragraphs 1 through 90 set forth above.

92.  Defendants, acting under color of state law pursuant to 42 U.S.C. §1983 intentionally violated Plaintiff's right to political association in violation of the First Amendment to the Constitution of the United States when he was retaliated against on that basis.

93. Implied in every contract of employment in Delaware is a covenant of good faith and fair dealing.

94. That implied covenant of good faith and fair dealing prohibits employers from terminating employees in violation of public policy as well as from terminating an employee based upon falsified or manipulated employment records to create fictitious grounds for termination.

95. Defendants breached the covenant of good faith and fair dealing to Plaintiff by terminating Plaintiff based upon retaliatory motives for his political association.

96. Defendants misrepresented their motive for discipline and termination based upon legitimate business reasons and is therefore pretextual.

97. Defendants intentionally retaliated against Plaintiff when they disciplined him more harshly than other employees.

98. Defendants intentionally retaliated against Plaintiff when they terminated him.

99. As a direct and proximate result of Defendants' unlawful retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, a loss of employment, loss of considerable pay, both regular and overtime, past, present, future and prospective, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

100. Defendants' retaliation was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

101. The above-stated damages were not the result of any act or omission on the part of Plaintiff.

## COUNT III
## (Invasion of Privacy)

102. Plaintiff repeats and realleges paragraphs 1 through 101 as set forth above.

103. Defendants invaded Plaintiff's privacy when they ordered that the Local Union's computer be seized and its contents analyzed.

104. This computer contained confidential information pertaining to Plaintiff, Local Union members and the business and operations of the Local Union.

105. Plaintiff had a reasonable expectation of privacy in the information stored on the computer.

106. Defendants' seizing and analyzing this computer and its contents is objectionable to a reasonable person.

107. The invasion of Plaintiff's right to privacy was proximately caused by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Enter a declaratory judgment declaring the acts of Defendants to be a violation of Plaintiff's constitutional rights;

b) Enter a judgment against Defendants, for compensatory damages, including lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment and injury to his reputation;

c) Enter judgment against Defendants for punitive damages;

d)  Issue a mandatory injunction ending the continuing illegal actions of Defendants and barring them from considering political association whenever making employment decisions;

e)  Issue a reparative injunction directing that Defendants place a signed document in Plaintiff's personnel file indicating that he was wrongfully disciplined and terminated in violation of his civil rights;

f)  Award Plaintiff attorney's fees, costs, pre- and post-judgment interest for this action; and

g)  Require such other and further relief as the Court deems just and proper under the circumstances.

MARTIN & WILSON, P.A.

_____
Timothy J. Wilson, Esquire (DE #4323)
Jeffrey K. Martin, Esquire (DE #2407)
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681 – telephone
(302) 777-5803 – facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiff*

Dated: July 26, 2007

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DENNIS E. PARKSTONE, III

**DEFENDANTS** CHRISTOPHER A. COONS, INDIVIDUALLY AND OFFICIAL CAPACITIES; RICHARD PRZYWARA, INDIVIDUALLY AND OFFICIAL CAPACITIES; AND NEW CASTLE COUNTY, A MUNICIPAL CORPORATION

(b) County of Residence of First Listed Plaintiff **NEW CASTLE**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **NEW CASTLE**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number) (302) 777-4681
MARTIN & WILSON, P.A.
1508 PENNSYLVANIA AVE, WILMINGTON, DE 19806

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 555 Prison Condition | | | |
| | ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983; FIRST AMENDMENT TO U.S. CONSTITUTION

Brief description of cause:
VIOLATION OF RIGHT TO POLITICAL ASSOCIATION

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 07/26/07
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-465



# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

I HEREBY ACKNOWLEDGE RECEIPT OF ___4___ COPIES OF AO FORM 85.

JUL 2 0 2007
(Date forms issued)

_Lilly Van Dyk_
(Signature of Party or their Representative)

_Lilly Van Dyk_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action