# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DENNIS E. PARKSTONE, III** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. 07-465-SLR** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER A. COONS,** | : | |
| **individually and in his official capacity;** | : | |
| **RICHARD PRZYWARA, individually** | : | **JURY TRIAL DEMANDED** |
| **and in his official capacity; and** | : | |
| **NEW CASTLE COUNTY, a municipal** | : | |
| **corporation,** | : | |
| | : | |
| **Defendants.** | : | |


**DEFENDANTS', NEW CASTLE COUNTY, CHRISTOPHER A. COONS, individually and in his official capacity and RICHARD PRZYWARA, individually and in his official capacity OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**


Respectfully submitted,

 _/s/ Richard R. Wier, Jr._
Richard R. Wier, Jr. ( #716)
Michele D. Allen (#4359)
Two Mill Road, Suite 200
Wilmington, DE 19806
Rwier@wierlaw.com
302.888.3222
Attorneys for Defendants

Dated: September 17, 2007

# TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I..     NATURE AND STAGE OF THE PROCEEDINGS   . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.     Motion to Dismiss Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.     Plaintiff's Complaint Must Be Dismissed For Failing To State A Claim Upon Which Relief Can Be Granted Because Plaintiff Waived All His Rights To File Any Legal Action When He Entered Into The Memorandum Of Understanding With New Castle County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.     Claims Against Coons And Przywara In Their Official Capacities Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.     Plaintiff's Invasion of Privacy Claim Against Defendants New Castle County, Coons and Przywara Must Be Dismissed As Plaintiff Fails to State a Claim Upon Which Relief Could be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## <u>TABLE OF CITATIONS</u>

**Cases**

*Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . .  4

*Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.,* 998 F.2d 1192,

    1196 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*McCall v. U.S. Postal Service,* 839 F.2d 664 (Fed.Cir 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Town of Newton v. Rumery,* 480 U.S. 386 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

*Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 452 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55 (1978) . . . .  7

*Kentucky v. Graham,* 473 U.S. 159, 165 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**Statutes**

Fed. R. Civ. P. 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

42 U.S.C § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

10 *Del.C.* §4010-4013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 7

10 *Del.C.* § 4011(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

10 *Del.C.* §§ 4012 and 4011(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12 (b)(6), Defendants, New Castle County (hereinafter County) Christopher A. Coons (hereinafter Coons) and Richard Przywara[1] (hereinafter Przywara) (hereinafter collectively as Defendants),  submit the following in support of their Motion To Dismiss.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff specifically alleges this case arises under 42 U.S.C § 1983 and under the State Law claims of Breach of Good Faith and Fair Dealing and Invasion of Privacy. *Exhibit* A.[2] Plaintiff filed his Complaint on July 26, 2007 alleging that Defendants wrongfully terminated him due to his support and loyalty to former County officials Thomas Gordon (hereinafter Gordon) and Sherry Freebery (hereinafter Freebery), alleging that support and loyalty was an act of political association protected by the First Amendment. *Ex.* A.  Additionally, Plaintiff claims that Defendants breached an implied covenant of good faith and fair dealing when they terminated him allegedly in retaliation for his political association. *Id.* Lastly, Plaintiff alleges that Defendants invaded his privacy when they ordered that the Local Union's computer be seized. *Id.*    Plaintiff has failed to state a claim upon which relief can be granted because on May 12, 2005, Plaintiff entered into a binding Memorandum of Understanding (hereinafter MOU) with Defendants and waived all rights to pursue any legal action, including any of the claims alleged herein. *Exhibit*

---

[1]Richard Przywara resigned from his position as General Manager of Special Services for the County on ___ Pursuant to Federal Rule of Civil Procedure 25(d)(1), "when a public officer is a party to an action in his official capacity and during its pendency . . . resigns . . . the action does not abate and the officer's successor is automatically substituted as a party." Therefore, Tracy Surles as the Acting General Manager should be substituted with respect to the official capacity claims and all references to Przywara should only pertain to his individual capacity.

[2] Exhibit A is the Complaint attached hereto.

B[3]. Therefore, Defendants move this Court for an Order dismissing the Complaint in its entirety.

## II.    SUMMARY OF ARGUMENT

1.  Plaintiff's Complaint must be dismissed for failing to state a claim upon which relief can be granted because plaintiff waived all his rights to file these claims when he entered into the Memorandum Of Understanding with New Castle County.

2.  Claims against Coons and Przywara in their official capacities should be dismissed.

3.  Plaintiff's claim for invasion of privacy against defendants New Castle County, Coons and Przwara must be dismissed as this claim is barred by the County and Municipal Tort Claims Act ("The Act"), 10 *Del.C.* §4010-4013.

## III.    STATEMENT OF FACTS

Dennis E. Parkstone, III, (Plaintiff) was employed by New Castle County in the Special Services Department and was a member of American Federation of State, County, and Municipal Employees ("AFSCME"). *Exhibit A* ¶1.  In February 2005, Plaintiff received a joke regarding a donkey, which was in poor taste, and then forwarded it to several New Castle County employees. *Exhibit A* ¶43, 45.  As a result of this e-mail Plaintiff's computer usage was investigated by New Castle County because a female employee who received the e-mail filed a sexual harassment complaint.  Based upon that investigation, New Castle County made a determination that Plaintiff should be terminated.  However, in consideration for Defendants not terminating Plaintiff's employment he agreed to a 30 day suspension and voluntarily entered into a legally binding MOU that set forth the requirements for his continued employment.

---

[3] Exhibit B is the MOU and is attached hereto.

*Exhibit A* ¶ 56, 59. Plaintiff agreed to abide by the conditions of the MOU when he signed it.

*Exhibit B.* The MOU expressly waived Plaintiff's right to file the claims which he now asserts

in his Complaint. The MO U clearly states that, *inter alia,* Plaintiff was waiving his right to file

any legal action regarding his discipline or termination. *Exhibit B.* In exchange for not being

terminated, Plaintiff also agreed to a thirty (30) day suspension and that his employment would

only be continued on specific conditions. The MOU which Plaintiff voluntarily signed stated:

"I , Dennis Parkstone, understand that my employment with New Castle County ("County") is

being continued on the following conditions:

1. I understand that the discipline issued as a result of an investigation surrounding sexually-oriented and potentially offensive activity on my County-issued computer was my responsibility.

2. I understand that any activity on my County-issued computer may be reviewed at any time, at County's choosing, and I acknowledged that the County has the right to do so, in accordance with House Bill 75.

3. I understand that any violations of the Discipline Code or Personnel Policies and Procedures with respect to the use of any County-issued computer will be cause for termination from employment, and this agreement will remain in force for three years beginning Thursday May 12, 2005.

4. I agree not to file a grievance or ***any other legal action*** with respect to this matter."

*Exhibit B.* (emphasis added*)*

On June 28, 2005 in direct violation in violation of the MOU, Plaintiff filed a grievance

regarding the discipline he had received. *Exhibit A* ¶ 72. On August 18, 2005, retroactive to

July 28, 2005, Plaintiff was terminated for violating the MOU agreement. *Exhibit A* ¶74. In

further violation of the MOU agreement, Plaintiff filed the instant lawsuit despite the fact that

he was clearly aware that the MOU precluded him from filing any legal action with respect to

-3-

his termination or discipline.

## IV.   ARGUMENT

### A.   Motion to Dismiss Standard

In deciding a Motion To Dismiss the Court will generally accept as true the factual

allegations in the Complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).  However, the

Court does not have to accept "bold assertions or legal conclusions" *Morse v. Lower Merion*

*Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  When deciding a Motion to Dismiss the Court

generally will only consider the complaint, exhibits attached to the complaint and matters of

public record.  *Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.,*

998 F.2d 1192, 1196 (3d Cir. 1993).  However, a Court may consider "an undisputed authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document." *Id.*  Defendants have attached the MOU that was entered into

between the parties and is referenced in Plaintiff's Complaint.  The attachment of the MOU,

therefore, does not convert Defendants' Motion to Dismiss into a Motion for Summary

Judgement.

### B.   Plaintiff's Complaint Must Be Dismissed For Failing To State A Claim Upon Which Relief Can Be Granted Because Plaintiff Waived All His Rights To File Any Legal Action When He Entered Into The Memorandum Of Understanding With New Castle County.

On May 12, 2005, Plaintiff knowingly and voluntarily entered into the MOU in which he

clearly agreed to be bound by the conditions set forth in the agreement and was fully aware and

understood that a breach of the agreement would result in his termination.  Moreover, Plaintiff

fully agreed that as part of the MOU and in consideration for continued employment, that he

would not file any legal action with respect to his discipline or subsequent termination. The MOU was a contract negotiated between the Defendants and Plaintiff, who faced removal for serious violations of the policies and procedures of New Castle County. In exchange for Defendants' agreement to suspension and not termination, Plaintiff agreed to the terms and conditions of the MOU. The MOU, which Plaintiff signed, speaks for itself. The interpretation of the MOU is a question of law. *McCall v. U.S. Postal Service,* 839 F.2d 664 (Fed.Cir 1988). The United States Supreme Court in *Town of Newton v. Rumery,* 480 U.S. 386 (1987), held that there could not be a *per se* rule invalidating release-dismissal agreements because they are not *ipso facto* void against public policy and, therefore, each must be addressed on a case by case basis. *Id.* at 394-397.

The MOU is a valid waiver and release of Plaintiff's claims including his § 1983 claims, *Rumery supra.* The Court in *Rumery* held that an agreement to waive a right to sue under a federal statute is enforceable if the interest in enforcement outweighs any harm to the underlying public policy. *Id.* at 392. The Agreement in this case is equally enforceable. In *Rumery,* the Respondent was initially charged criminally with tampering with a witness. *Id.* at 390. The prosecutor entered into an agreement with Respondent to dismiss the criminal charges if he agreed not to file any civil claim he might have against the Town of Newton. *Id.* at 391. After the charges were dismissed, Respondent filed a claim against the Town of Newton for violation of 42 U.S.C.S § 1983 stating that his constitutional rights were violated. *Id.* The Court in *Rumery,* agreed that § 1983 may further a public policy interest by seeking to vindicate civil rights, but the Court held that Congress gave the decision to file a § 1983 suit to the individual who was injured rather than to the public at large. *Id.* at 417. Therefore, the Court

concluded that there was not a greater public interest to be considered other than Respondent's own decision that he would personally benefit from the agreement. *Id.* The Court also stated that there were other concerns implicated by § 1983 suits. *Id.* at 418. It is not in the public's interest to have officials diverted from their normal duties and to incur the expense of defending unjust claims. *Id.* Therefore, release-dismissal agreements that protect pubic officials from marginal and frivolous claims can be in furtherance of the public interest. *Id.* As was true with the Respondent in *Rumery,* Plaintiff voluntarily chose to enter into and benefit from the MOU. Therefore, enforcement of the MOU between Plaintiff and Defendants in the case does not harm any underlying public policy, and in fact furthers such policy for the reasons stated *supra.* Accordingly, the MOU is enforceable and bars the Plaintiff's claims.

Moreover, the waiver of Plaintiff's rights in the MOU was a voluntary act and his conveniently belated claim that he signed the MOU under duress because he feared he would lose his job is without merit. Plaintiff fails to allege any facts other than fear of losing his job that support his claim of duress. *Exhibit* A ¶60. Plaintiff made a rational decision to enter into the MOU when he weighed his continued employment against waiving his rights to assert any claims. "Parties are often forced to make difficult choices which may effectively waive statutory or even constitutional rights." *McCall,* 839 F.2d at 667 *(citing Rumery,* 107 S. Ct. at 1192). Moreover, the existence of financial pressure to sign a waiver is insufficient to establish involuntariness. *Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 452 (3d Cir. 1988). Plaintiff received the benefit of continued employment even though his actions warranted termination. In exchange, he waived his right to file any legal action with respect to the discipline he received or subsequent termination. Therefore, the MOU is valid and precludes Plaintiff's claims.

**C.    Claims Against Coons And Przywara In Their Official Capacities Should Be Dismissed.**

Plaintiff has sued the County twice on the same claims.  The official capacity claims against these Defendants are duplicative of the municipal liability claims asserted against the County, as suits against government officials in their official capacities are equivalent to suits against the government entity itself.  *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 n. 55 (1978).  *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985)("official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.").  Therefore, the allegations against Defendants Coons and Przywara  in their official capacities should be dismissed.

**D.    Plaintiff's  Invasion of Privacy Claim Against Defendants New Castle County, Coons and Przwara Must Be Dismissed As Plaintiff Fails to State a Claim Upon Which Relief Could be Granted.**

Plaintiff's state law claim for invasion of privacy must be dismissed because it is barred by the County and Municipal Tort Claims Act ("The Act"), 10 *Del.C.* § 4010-4013. The Act protects "all governmental entities and their employees from suit on any and all tort claims seeking recovery of damages." 10 *Del.C.* § 4011(a).  The County is a "governmental entity" to which the Act applies pursuant to Section 4010, which defines a "governmental entity" as "any municipality, town, county, administrative entity or instrumentality created pursuant to ... Title 9...."  In addition, Coons and Przywara are "governmental employees"[4] to which the Act applies. This broad grant of immunity is

---

[4] **Section 4010(1) of Title 10** defines a "governmental employee" as "a person acting on  behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state, or federal funds, including elected or appointed officials, volunteer firefighters and rescue squad members where the rescue squad receives full or partial financial support from political subdivisions or from the State, but the term "employee" shall not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity."

subject only to the narrowly tailored exceptions set forth in 10 *Del.C.* §§ 4012 and 4011(c).

Plaintiff's claim for invasion privacy against the Defendants does not fall within any of the

exceptions to governmental immunity and therefore must be dismissed.

## V.    CONCLUSION

For the aforementioned reasons, the Defendants respectfully request that Plaintiff's Complaint be

dismissed for failing to state a claim upon which relief can be granted.


Respectfully submitted,

 /s/ *Richard R. Wier, Jr.*
Richard R. Wier, Jr. ( #716)
Michele D. Allen (#4359)
Two Mill Road, Suite 200
Wilmington, DE 19806
Rwier@wierlaw.com
302.888.3222
Attorneys for Defendant

Dated September 17, 2007

**IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DENNIS E. PARKSTONE, III** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. 07-465-SLR** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER A. COONS,** | : | |
| **individually and in his official capacity;** | : | |
| **RICHARD PRZYWARA, individually** | : | **JURY TRIAL DEMANDED** |
| **and in his official capacity; and** | : | |
| **NEW CASTLE COUNTY, a municipal** | : | |
| **corporation,** | : | |
| | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I certify that on this 17th day of September, 2007 have caused a true and correct copy of the attached

**DEFENDANTS', NEW CASTLE COUNTY, CHRISTOPHER A. COONS, individually and in**

**his official capacity and RICHARD PRZYWARA, individually and in his official capacity**

**OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** to be

ELECTRONICALLY FILED, and copied to:

Timothy James Wilson, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Avenue
Wilmington, DE 19806

     */s/ Richard R. Wier, Jr.*
Richard R. Wier, Jr. ( #716)
Michele D. Allen (#4359)
Two Mill Road, Suite 200
Wilmington, DE 19806
Rwier@wierlaw.com
302.888.3222

-8-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED
JUL 2 7 2007
NEW CASTLE COUNTY
DEPARTMENT OF LAW

DENNIS E. PARKSTONE, III,                :

    Plaintiff,                                :

    v.                                        :          C.A. No. 0 7 - 4 6 5

CHRISTOPHER A. COONS,                    :
individually and in his official capacity; :
RICHARD PRZYWARA, individually            :          JURY TRIAL DEMANDED
and in his official capacity; and         :
NEW CASTLE COUNTY, a municipal            :
corporation,                              :

    Defendants.                               :
                                              :

FILED U.S. DISTRICT COURT
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2007 JUL 26 PM 3: 58

## COMPLAINT

### PARTIES

1.    Dennis E. Parkstone, III ("Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware, and currently resides at 300 Brookside Drive, Wilmington, DE 19804. He was employed by New Castle County in the Special Services Department continuously from February 16, 1970 until his termination on August 18, 2005. At all times material hereto, he has been a diligent, honest and loyal employee who always performed his job in an exemplary manner.

2.    Defendant Christopher A. Coons ("Coons") at all times material hereto, has been the County Executive of New Castle County. He is sued in his individual and official capacities for retaliatory actions which were taken against Plaintiff. Coons is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

3.      Defendant Richard Przywara ( "Przywara") at all times material hereto, has been the General Manager of Special Services for New Castle County.  He is sued in his individual and official capacities for retaliatory actions which were taken against Plaintiff.  Przywara is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

4.      Defendant New Castle County ("NCC") is a municipal corporation under the laws of the State of Delaware.  Defendant is subject to service through the New Castle County Government Center, 87 Reads Way, New Castle, DE 19720.

## JURISDICTION

5.      Jurisdiction is founded on the existence of a question arising under federal statute 42 U.S.C. §1983 and the First Amendment to the Constitution of the United States that protects individuals' rights to freedom of political association.  The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal law, which prohibits adverse action against employees for exercising their federally protected right to freedom of political association and on the basis of retaliation.

6.      Plaintiff's common law claims for Breach of the Implied Covenant of Good Faith and Fair Dealing and Invasion of Privacy are brought pursuant to the pendent jurisdiction of this Court.

## FACTUAL BACKGROUND

7.      Plaintiff began employment with NCC on or around February 16, 1970. Prior to his termination on August 18, 2005, [1] Plaintiff was employed with NCC for over thirty-five (35) years.

---

[1] NCC notified Mr. Parkstone on August 18, 2005 that his employment was terminated.  However, that termination notice indicated that the termination was retroactive to July 28, 2005.

8.    Plaintiff worked as a Laborer I from February 16, 1970 until sometime in 1971 when he was promoted to Laborer II.

9.    In 1972, Plaintiff was promoted to Motor Equipment Operator I.

10.    He served in this capacity until 1975 when he was promoted to Motor Equipment Operator II.

11.    In 2001 he was promoted to Crew Chief I.

12.    He remained employed in that capacity until his employment with New Castle County was terminated on August 18, 2005.

13.    Plaintiff was also very active in his union, AFSCME[2] Local 459 ("Local Union"). The first position to which he was elected was Shop Steward in 1974.

14.    He was elected Vice-President of the Union in 1980 and then elected President in 1981, 1982, 1984, 1990, 1992, 1994, 1996, 2002 and 2004.

15.    In addition, Plaintiff was elected as Recording Secretary for the Union in 1998 and 2000.

16.    Plaintiff was politically supportive of Tom Gordon ("Gordon") when Gordon successfully ran for County Executive in 1996 and 2000.  He also supported Gordon during his two terms as County Executive.

17.    During the Gordon Administration, Sherry Freebery ("Freebery"), served as the NCC Chief Administrative Officer.

18.    Plaintiff also cast his political support for Freebery.

19.    In this regard, Plaintiff worked at the election polls encouraging support for Gordon and Freebery ("the Gordon/Freebery Administration") and handing out flyers on their behalf.  He also made telephone calls for the Gordon/Freebery Administration

---

[2] American Federation of State, County, and Municipal Employees

urging voters to support that Administration and provided transportation to voters to and from the election polling places.

20.    Gordon was ineligible to run for another term as County Executive beginning in 2004.

21.    As such, Freebery ran for the County Executive post as did Defendant Coons.

22.    Plaintiff was also active in Freebery's campaign and openly supported her in the same as he supported the Gordon Freebery Administration as outlined above in ¶ 19.

23.    In the course of Gordon's two terms as County Executive, as well as during the course of the race between Coons and Freebery for County Executive, a bitter rivalry developed between the Gordon/Freebery camp and the Coons camp.

24.    Many County employees were identified with the candidate for whom they cast their political support.

25.    During the time period in which Freebery and Coons were campaigning, Plaintiff was the President of the Local Union to which the hourly NCC employees employed in the Special Services Department belonged, AFSCME.

26.    During her campaign, Freebery requested permission from Plaintiff to speak at a union meeting. That request was granted by Plaintiff.

27.    Coons defeated Freebery in the Democratic Primary Election and went on to succeed Gordon as County Executive.

28.    Prior to the Coons Administration winning the Primary Election, Plaintiff encountered no problems in his employment and was subject to no disciplinary actions.

29.    However, shortly after Coons' victory over Freebery, Plaintiff began to be retaliated against for his support of Gordon and Freebery.

30.    Specifically, following Coons election, John Carney, Lieutenant Governor for the State of Delaware ("Carney"), telephoned Plaintiff and asked why Plaintiff invited Freebery to speak at the Local Union meeting but did not ask Coons to speak.

31.    Plaintiff responded that Freebery had not been *invited*; she made a request to speak.

32.    Carney then asked if Coons could speak at a union meeting now that he had won the Primary Election. Plaintiff replied, "All he has to do is ask."

33.    Another NCC employee, Tom Baliccio, a Coons supporter, called Plaintiff and requested that Coons be permitted to speak at the next Union Meeting.

34.    Plaintiff granted that request, but also granted a request to have the Republican candidate for County Executive, Chris Castagno ("Castagno"), to speak at the same meeting.

35.    Coons was very unhappy about appearing at the same meeting with Castagno.

36.    Upon information and belief, Coons was unhappy with and blamed Plaintiff for first permitting Freebery to speak at the Union meeting and then for scheduling Castagno to speak at the same meeting.

37.    During the Gordon/Freebery Administration, Joe Freebery was the General Manager of Special Services, the arm of NCC for which Plaintiff also worked. Joe Freebery was also Sherry Freebery's brother.

38.    One of Coons' first orders of business after he became County Executive was to terminate Joe Freebery's employment and appoint Defendant Przywara as "acting" General Manager of Special Services.

39.    As President of the Local Union, Plaintiff was permitted to use a union computer.

40.    This computer was the Union's property and located inside the Union's office at 100 New Churchman's Road, New Castle, DE 19720.

41.    From time to time, Plaintiff received jokes via email and occasionally would forward some of those jokes to his friends.    Plaintiff was never previously disciplined for forwarding jokes at any time during his employment for New Castle County.

42.    Moreover, many other NCC employees receive jokes via email from other NCC employees and are not disciplined as severely or not disciplined at all for receiving and forwarding such jokes.

43.    In or about February 2005, Plaintiff received a joke via email about a donkey from another NCC employee, Rich Seery.

44.    Rich Seery was a Coons political supporter and actually worked for Coons as during Coons' campaign.

45.    The joke was arguably in poor taste, but fairly innocuous.    Plaintiff forwarded the joke to Ronnie Meadowcroft, Chris Natrin and several other NCC employees.

46.    Shortly thereafter, J. Wayne Merritt ("Merritt"), Senior Manager for Special Services, approached Plaintiff and told him, "You can't be sending these jokes around. It could offend someone"

47.    In or about early April 2005, Merritt and Jim Hendricks, Chief of Construction Support for NCC, pulled Richard Smallwood, Vice President of the Local Union, from his job site and demanded that he unlock the Local Union office.

48.    Once inside, Merritt and Hendricks seized the Union computer and sent it away to have the information stored on it analyzed.

49.    NCC had begun an "investigation" into Plaintiff's use of this computer ostensibly due to this otherwise innocuous email.

50.    The computer was the Local Union's property and contained confidential information about Plaintiff, Local Union members, as well as the operations of the Local Union.

51.    NCC had no right or authorization to unlawfully seize and/or analyze this computer or the contents stored on this computer.

52.    Plaintiff was not the only individual who used the computer in question.

53.    During this investigation, Plaintiff was questioned for three hours and this questioning was recorded by NCC.

54.    In or about early May 2005, Plaintiff went to see Przywara. Przywara told Plaintiff that in the future, Plaintiff was to schedule all Local Union business with him before hand; that Plaintiff must tell Przywara what the business was; and that Plaintiff was not to be in the Local Union office unless he was first given permission by Przywara.

55.     Despite these statements, the collective bargaining agreement between the Local Union and NCC states that the President of the Local Union is permitted to conduct Union business by simply informing NCC that he was conducting Union business.  In other words, the President is not required to tell NCC the nature of the Union business.

56.     In or about early May 2005, Mike Begatto ("Begatto"), Executive Director AFSCME Council 81, spoke to Coons and Przywara at a dinner party.  Coons and Przywara stated that they were going to fire Plaintiff ostensibly over the computer issue. However, during that same conversation, Mr. Begatto persuaded them into imposing a twenty-five (25) or thirty (30) day suspension instead of termination.

57.     On or about May 11, 2005, Merrit instructed Plaintiff to attend a meeting the next day regarding his punishment for the email situation.  Merritt advised him that he must sign the suspension papers that would be presented to him at that meeting or he would be terminated on the spot.

58.     On or about May 12, 2005, a meeting was held in which Plaintiff received a thirty (30) day suspension.

59.     However, as a condition to receiving this suspension, Plaintiff was required to sign a Memorandum of Understanding prepared by NCC waiving certain rights and agreeing to other untrue representations.

60.     Plaintiff, under duress and fearing that he would lose his job of thirty-five (35) years, had no choice but to sign the Memorandum of Understanding.

61.     Prior to Plaintiff signing the Memorandum of Understanding, Przywara represented to Plaintiff that any and all other NCC employees who committed the same violation would receive the same punishment.

62.    Likewise, the Collective Bargaining Agreement between the Local Union and NCC requires that all employees be treated equally.

63.    Plaintiff relied on this representation when executing the Memorandum of Understanding.

64.    While suspended, Plaintiff discovered that others had committed the same offense but were only given five-day suspensions.

65.    These suspensions were in direct contravention to Przywara's covenant to treat all violators equally.

66.    Furthermore, it was a violation of the Collective Bargaining Agreement as set forth above in ¶ 62.

67.    In fact, the person who sent Plaintiff the donkey email in question, Rich Seery, initially received no suspension or punishment whatsoever.

68.    Mr. Seery worked for Coons and was a Coons political supporter.

69.    It was not until Plaintiff complained to NCC about Seery receiving no discipline that Seery received no punishment that he was eventually suspended.

70.    However, Seery received a less severe punishment of only a five (5) day suspension and this suspension did not occur until September 2005.

71.    Had Plaintiff not complained to NCC, it is unlikely that Seery would have been disciplined at all.

72.    Plaintiff, upset over the inequity of the punishment that he received in comparison to the other violators, filed a grievance through the Local Union on June 28, 2005.

73.    By letter signed by Przywara and dated July 11, 2005, NCC refused to consider Plaintiff's grievance.

74.    NCC terminated Plaintiff from his employment on August 18, 2005, retroactive to July 28, 2005, after thirty-five (35) years of faithful service, ostensibly because Plaintiff attempted to file a grievance.

75.    Plaintiff has exhausted all of his administrative remedies.

## COUNT I
### (First Amendment – Political Association)

76.    Plaintiff repeats and realleges paragraphs 1 through 75 as set forth above.

77.    Plaintiff's support and loyalty to Gordon and Freebery was an act of political association protected by the First Amendment.

78.    At all times Defendants knew Plaintiff was supportive and loyal to Gordon and Freebery; Defendants' rival political faction.

79.    Defendants' respective positions in the local government place them in a position of power over Plaintiff.

80.    Defendants attempted to use the power of their offices to retaliate against Plaintiff for his political support and loyalty to Gordon and Freebery.

81.    Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendant's decision to launch the "investigation" into Plaintiff's forwarding of the donkey joke.

82.    But for Plaintiff's political association with Gordon and Freebery, Defendants would not have conducted such an investigation.

83.    Defendants' actions taken against Plaintiff constitute a constitutional violation of his right to political association.

84.    The right to political association is clearly established.

85.    Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendants' decision to punish Plaintiff more harshly than other employees who committed similar violations.

86.    But for Plaintiff's political association with Gordon and Freebery he would not have been punished or, would have been punished less severely.

87.    Plaintiff's political association with Gordon and Freebery was a substantial motivating factor in Defendants' decision to terminate Plaintiff.

88.    But for Plaintiff's political association with Gordon and Freebery he would not have been terminated.

89.    A reasonable officer in Coons', or Przywara's position would or should know that their actions taken against Plaintiff for his political association are prohibited.

90.    Political affiliation or association is not an appropriate requirement for the effective performance of Plaintiff's job.  Plaintiff's position as Crew Chief I did not fall within the exception set forth in *Elrod v. Burns*, 427 U.S. 347 ( 1976); and *Branti v. Finkel*, 445 U.S. 507 (1980).

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

91.    Plaintiff repeats and realleges paragraphs 1 through 90 set forth above.

92.    Defendants, acting under color of state law pursuant to 42 U.S.C. §1983 intentionally violated Plaintiff's right to political association in violation of the First Amendment to the Constitution of the United States when he was retaliated against on that basis.

93.     Implied in every contract of employment in Delaware is a covenant of good faith and fair dealing.

94.     That implied covenant of good faith and fair dealing prohibits employers from terminating employees in violation of public policy as well as from terminating an employee based upon falsified or manipulated employment records to create fictitious grounds for termination.

95.     Defendants breached the covenant of good faith and fair dealing to Plaintiff by terminating Plaintiff based upon retaliatory motives for his political association.

96.     Defendants misrepresented their motive for discipline and termination based upon legitimate business reasons and is therefore pretextual.

97.     Defendants intentionally retaliated against Plaintiff when they disciplined him more harshly than other employees.

98.     Defendants intentionally retaliated against Plaintiff when they terminated him.

99.     As a direct and proximate result of Defendants' unlawful retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, a loss of employment, loss of considerable pay, both regular and overtime, past, present, future and prospective, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

100.    Defendants' retaliation was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

101.    The above-stated damages were not the result of any act or omission on the part of Plaintiff.

### COUNT III
### (Invasion of Privacy)

102.    Plaintiff repeats and realleges paragraphs 1 through 101 as set forth above.

103.    Defendants invaded Plaintiff's privacy when they ordered that the Local Union's computer be seized and its contents analyzed.

104.    This computer contained confidential information pertaining to Plaintiff, Local Union members and the business and operations of the Local Union.

105.    Plaintiff had a reasonable expectation of privacy in the information stored on the computer.

106.    Defendants' seizing and analyzing this computer and its contents is objectionable to a reasonable person.

107.    The invasion of Plaintiff's right to privacy was proximately caused by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court:

a)    Enter a declaratory judgment declaring the acts of Defendants to be a violation of Plaintiff's constitutional rights;

b)    Enter a judgment against Defendants, for compensatory damages, including lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment and injury to his reputation;

c)    Enter judgment against Defendants for punitive damages;

d)   Issue a mandatory injunction ending the continuing illegal actions of Defendants and barring them from considering political association whenever making employment decisions;

e)   Issue a reparative injunction directing that Defendants place a signed document in Plaintiff's personnel file indicating that he was wrongfully disciplined and terminated in violation of his civil rights;

f)   Award Plaintiff attorney's fees, costs, pre- and post-judgment interest for this action; and

g)   Require such other and further relief as the Court deems just and proper under the circumstances.

MARTIN & WILSON, P.A.

Timothy J. Wilson, Esquire (DE #4323)
Jeffrey K. Martin, Esquire (DE #2407)
1508 Pennsylvania Avenue
Wilmington, DE  19806
(302) 777-4681 – telephone
(302) 777-5803 – facsimile
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiff*

Dated:  July 26, 2007

CHRISTOPHER A. COONS
COUNTY EXECUTIVE

RICHARD T. PRZYWARA
ACTING GENERAL MANAGER



DEPARTMENT OF SPECIAL SERVICES

## <u>MEMORANDUM OF UNDERSTANDING</u>

This agreement is made between **Dennis Parkstone** and New Castle County.

I, **Dennis Parkstone**, understand that my employment with New Castle County ("County") is being continued on the following conditions:

1. I understand that the discipline issued as a result of an investigation surrounding sexually-oriented and potentially offensive activity on my County-issued computer was my responsibility.

2. I understand that any activity on my County-issued computer may be reviewed at any time, at County's choosing, and I acknowledge that County has the right to do so, in accordance with House Bill 75.

3. I understand that any violations of the Discipline Code or Personnel Policies and Procedures with respect to the use of any County-issued computer will be cause for termination from employment, and this agreement will remain in force for three years beginning Thursday, May 12, 2005.

4. I agree not to file a grievance or any other legal action with respect to this matter.

_____  5/12/05
For the Union                    Date

_____  5-12-05
Dennis Parkstone                 Date

_____  5-12-05
For New Castle County            Date

87 READS WAY, NEW CASTLE, DE 19720        PHONE: 302-395-5700        FAX: 302-395-5870