## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DENNIS E. PARKSTONE, III,          :
                                   :
         Plaintiff,                :
                                   :        C.A. No.  C.A. No. 07-465-SLR
    v.                             :
                                   :
CHRISTOPHER A. COONS,              :
individually and in his official capacity;  :
RICHARD PRZYWARA, individually     :        JURY TRIAL DEMANDED
and in his official capacity; and  :
NEW CASTLE COUNTY, a municipal     :
corporation,                       :
                                   :
         Defendants.               :
                                   :

## PLAINTIFF'S ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON, ESQUIRE (DE #4323)
JEFFREY K. MARTIN, ESQUIRE (DE #2407)
1508 Pennsylvania Avenue
Wilmington, DE  19806
(302) 777-4681 – telephone
twilson@martinandwilson.com
jmartin@martinandwilson.com
*Attorneys for Plaintiff*

Dated:  October 9, 2007

## TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.       Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II.     Plaintiff Has Not Waived His Right To Bring This Lawsuit . . . . . . . . . . . . . . . . 13

           a.     Defendants failed to meet their burden of establishing
                  the validity of the alleged waiver contained in the
                  Memorandum of Understanding under the
                  "totality of the circumstances" test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

           b.     The Memorandum of Understanding is unenforceable
                  against Plaintiff because prior to Plaintiff's filing of his
                  grievance and this lawsuit, Defendants breached that
                  agreement, as well as the Collective Bargaining Agreement,
                  by failing to punish all other employees who committed
                  the same or similar offenses in a like manner . . . . . . . . . . . . . . . . . . . . . 17

           c.     The Memorandum of Understanding is void because it was
                  executed by Plaintiff under duress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

           d.     The Memorandum of Understanding is an invalid contract
                  because Defendants were under a pre-existing legal duty to
                  continue Plaintiff's employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           e.     The Memorandum of Understanding is an illegal contract
                  because it was executed to perpetrate an illegal act, retaliation
                  against Plaintiff for his political affiliation, and therefore is
                  contrary to public policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           f.     The Memorandum of Understanding is voidable by Plaintiff
                  as unconscionable because, due to Defendants' substantially
                  superior bargaining power, he was left with no other choice but
                  to sign the agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.    Plaintiff's Claim For Invasion Of Privacy Should Not Be Dismissed
Against Defendants Coons And Pryzwara In Their Individual Capacities
Because Their Actions Were Conducted With Wanton Negligence Or
Willful And With Malicious Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF CITATIONS

Amiot v. Kemper Ins. Co.,
    122 Fed. Appx. 577 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cole v. Gaming Entertainment, LLC,
    199 F. Supp.2d 208 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Coventry v. United States Steel Corp.,
    856 F.2d 448 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Evans v. Jeff D.,
    475 U.S. 717, 106 S.Ct. 1532 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Farris v. Moeckel,
    664 F. Supp. 881 (D. Del. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hudson v. D & V Mason Contractors, Inc.
    252 A.2d 166, (Del. Super. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Fruehauf Trailer Corp.,
    250 B.R. 168 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Martinez v. Nat'l Broadcasting Co.,
    877 F. Supp. 219 (D. N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Moseley v. Bay Ship Mgmt., Inc,
    174 F. Supp.2d 192 (D. N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Price v. Correctional Medical Services,
    493 F. Supp.2d 740 (D. Del. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Reiver v. Murdoch & Walsh, P.A.,
    625 F. Supp. 998 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Seidel v. Lee, 954 F.Supp. 810, 817 (D. Del. 1996),
    *citing* Restatement (Second) of Contracts, §§ 73, 80(2)(1979) . . . . . . . . . . . . . . . . . . . . 19

Town of Newton v. Rumery,
    480 U.S. 386 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
    140 F.3d 478 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

W.B. v. Matula,
    67 F.3d 484, 497 (3d Cir. 1995), *abrogated on other grounds by*

A.W. v. Jersey City Public Schools, 486 F.3d 791 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . 15

Williamson v. Correctional Medical Services,
    494 F. Supp.2d 285 (D. Del. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## OTHER AUTHORITIES

Calamari and Perillo, The Law of Contracts, §§ 49(b)(West 1987) . . . . . . . . . . . . . . . . . . . . . 19

Restatement (Second) of Contracts § 175 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Restatement (Second) of Contracts § 178 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## UNREPORTED DECISIONS

Eastern Electric and heating, Inc. v. Pike Creek Professional Center, Inc.,
    1986 WL 9031 (Del. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Halstead v. American Intern. Group Inc.,
    2005 WL 885200 (D. Del. 2005)
    citing Restatement (Second) of Contracts § 175 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 18

Research & Trading Corp v. Pfuhl,
    1992 WL 345465 (Del. Ch. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

RHIS Inc. v. Boyce,
    2001 WL 1192203 (Del. Ch. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Roberts v. Comcast Cable Company,
    2004 WL 1887487 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sexton v. State Farm Fire and Cas. Co.,
    2003 WL 23274849 (Del. Super. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**STATEMENT OF THE
NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff filed his Complaint on July 26, 2007 alleging Defendants' retaliatory actions against him in violation of his First Amendment Right to political association, a violation of the Implied Covenant of Good Faith and Fair Dealing, and a claim for Invasion of Privacy.  On September 17, 2007, Defendants filed a Motion to Dismiss all of the claims against all Defendants.

This is Plaintiff's Answering Brief in opposition to Defendants' Motion to Dismiss.

## SUMMARY OF ARGUMENT

I.      STANDARD OF REVIEW.

II.     PLAINTIFF HAS NOT WAIVED HIS RIGHT TO BRING THIS LAWSUIT.

a.      Defendants failed to meet their burden of establishing the validity of the alleged waiver contained in the Memorandum of Understanding under the "totality of the circumstances" test.

b.      The Memorandum of Understanding does not bar Plaintiff's lawsuit because prior to Plaintiff's filing of his grievance and this lawsuit, Defendants breached a material term of that agreement, as well as the Collective Bargaining Agreement by failing to punish all other employees who committed the same or similar offenses in a like manner.

c.      The Memorandum of Understanding is void because it was executed by Plaintiff under duress.

d.      The Memorandum of Understanding is an invalid contract because Defendants were under a pre-existing legal duty to continue Plaintiff's employment.

e.      The Memorandum of Understanding is an illegal contract because it was executed to perpetrate an illegal act, retaliation against Plaintiff for his political affiliation, and therefore is contrary to public policy.

f.      The Memorandum of Understanding is voidable by Plaintiff as unconscionable because, due to Defendants' substantially superior bargaining power, he was left with no other choice but to sign the agreement.

III.    PLAINTIFF'S CLAIM FOR INVASION OF PRIVACY SHOULD NOT BE DISMISSED AGAINST DEFENDANTS COONS AND PRYZWARA IN THEIR INDIVIDUAL CAPACITIES BECAUSE THEIR ACTIONS WERE CONDUCTED WITH WANTON NEGLIGENCE OR WILLFUL AND WITH MALICIOUS INTENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.    CONCLUSION.

## STATEMENT OF FACTS

Plaintiff Dennis E. Parkstone, III ("Plaintiff" or "Parkstone") began employment with New Castle County ("NCC") on or around February 16, 1970. (Compl. at ¶ 7) Prior to his termination on August 18, 2005,[1] Plaintiff was employed with NCC for over thirty-five (35) years beginning as a laborer and earning several promotions until he was terminated on August 18, 2005. (Id. at ¶¶ 5 – 12)

Plaintiff was also very active in his union, AFSCME[2] Local 459 ("Local Union"). (Id. at ¶ 13). The first position to which he was elected was Shop Steward in 1974. (Id.) Plaintiff was elected Vice President of the Union in 1980 and Recording Secretary in 1998 and 2000. (Id. at ¶¶ 14 – 15). He was also elected President of the Union in 1981, 1982, 1984, 1990, 1992, 1994, 1996, 2002 and 2004. (Id. at ¶ 14). Mr. Parkstone held the office of President of the Local Union at the time of his termination. (Id. at ¶¶ 12, 14).

Plaintiff was politically supportive of Tom Gordon ("Gordon") when Gordon successfully ran for New Castle County Executive in 1996 and 2000. (Id. at ¶ 16). He also supported Gordon during his two terms as County Executive. (Id.). During the Gordon Administration, Sherry Freebery ("Freebery"), served as the NCC Chief Administrative Officer. (Id. at ¶ 17). At the expiration of Gordon's terms, Freebery ran for the County Executive post as did Defendant Christopher Coons "("Coons"), the present New Castle County Executive. (Id. at ¶¶ 2, 21) Plaintiff also cast his political support for Freebery. (Id. at ¶ 22).

For both Gordon and Freebery, Plaintiff worked at the election polls encouraging support for Gordon and Freebery and handing out flyers on their behalf. (Id. at ¶ 19, 22). He also made telephone calls for Gordon and Freebery, urging voters to support that Administration and

---

[1] NCC notified Mr. Parkstone on August 18, 2005 that his employment was terminated. However, that termination notice indicated that the termination was retroactive to July 28, 2005.

7

provided transportation to voters to and from the election polling places during their elections. (Id.).

In the course of Gordon's two terms as County Executive, as well as during the course of the race between Coons and Freebery for County Executive, a bitter rivalry developed between the Gordon/Freebery camp and the Coons camp. (Id. at ¶ 23). Many County employees were identified with the candidate for whom they cast their political support. (Id. at ¶ 24). Plaintiff supported Coons' political rivals, Gordon and Freebery. (Id. at 16 – 22).

During the time period in which Freebery and Coons were campaigning, Plaintiff was the President of the Local Union to which the hourly NCC employees employed in the Special Services Department belonged. (Id. at ¶ 25). During her campaign, Freebery requested permission from Plaintiff to speak at a union meeting. (Id. at ¶ 26). That request was granted by Plaintiff. (Id.).

Coons defeated Freebery in the Democratic Primary Election and went on to succeed Gordon as County Executive. (Id. at ¶ 27). Prior to the Coons Administration winning the Primary Election, Plaintiff encountered no problems in his employment and was subject to no disciplinary actions. (Id. at ¶ 28). However, shortly after Coons' victory over Freebery, Plaintiff began to be retaliated against for his support of Gordon and Freebery. (Id. at ¶ 29).

Specifically, following Coons election, John Carney, Lieutenant Governor of the State of Delaware ("Carney"), telephoned Plaintiff and asked why Plaintiff invited Freebery to speak at the Local Union meeting but did not ask Coons to speak. (Id. at ¶ 30). Plaintiff responded that Freebery had not been *invited*; she made a request to speak. (Id. at ¶ 31). Carney then asked if Coons could speak at a union meeting now that he had won the Primary Election. (Id. at ¶ 32). Plaintiff replied, "All he has to do is ask." (Id.). Another NCC employee, Tom Baliccio, a Coons

---

[2] American Federation of State, County, and Municipal Employees

supporter, called Plaintiff and requested that Coons be permitted to speak at the next Union meeting. (Id. at ¶ 33). Plaintiff granted that request, but also granted a separate request from the Republican candidate for County Executive, Chris Castagno ("Castagno"), to speak at the same meeting. (Id. at ¶ 34). Upon information and belief, Coons was very unhappy about appearing at the same meeting with Castagno and blamed Plaintiff for first permitting Freebery to speak at the Union meeting and for scheduling Castagno to speak at the same meeting. (Id. at ¶ 35 – 36).

As President of the Local Union, Plaintiff was permitted to use a Local Union computer. (Id. at ¶ 39). This computer was the Local Union's property and located inside the Local Union's office at 100 New Churchman's Road, New Castle, DE 19720. (Id. at ¶ 40). From time to time, Plaintiff received jokes via email and occasionally would forward some of those jokes to his friends. (Id. at ¶ 41). Plaintiff was never previously disciplined for forwarding jokes at any time during his employment for New Castle County. (Id.). Moreover, many other NCC employees received jokes via email from other NCC employees and were not disciplined as severely or not disciplined at all for receiving and forwarding such jokes. (Id. at ¶ 42).

In or about February 2005, Plaintiff received a joke about a donkey via email from another NCC employee, Rich Seery. (Id. at ¶ 43). Rich Seery was a Coons political supporter and actually worked for Coons as during Coons' campaign. (Id. at ¶ 44). The joke was arguably in poor taste, but fairly innocuous. (Id. at ¶ 45). Plaintiff forwarded the joke to Ronnie Meadowcroft, Chris Natrin and several other NCC employees. (Id.).

Shortly thereafter, J. Wayne Merritt ("Merritt"), Senior Manager for Special Services, approached Plaintiff and told him, "You can't be sending these jokes around. It could offend someone." (Id. at ¶ 46). In or about early April 2005, Merritt and Jim Hendricks, Chief of Construction Support for NCC, pulled Richard Smallwood, Vice President of the Local Union,

9

from his job site and demanded that he unlock the Local Union office. (Id. at ¶ 47). Once inside, Merritt and Hendricks improperly seized the Local Union computer and sent it away to have the information stored on it analyzed. (Id. at ¶ 48). NCC had begun an "investigation" into Plaintiff's use of this computer ostensibly due to this otherwise innocuous email. (Id. at ¶ 49). During this investigation, Plaintiff was questioned for three hours and this questioning was recorded by NCC. (Id. at ¶ 53).

The computer was the Local Union's property and contained confidential information about Plaintiff, Local Union members, as well as the operations of the Local Union. (Id. at ¶ 50). NCC had no right or authorization to unlawfully seize and/or analyze this computer or the contents stored on this computer. (Id. at ¶ 51). Plaintiff was not the only individual who used the computer in question. (Id. at ¶ 52).

In or about early May 2005, Plaintiff went to see Defendant Richard Przywara ("Pryzwara"), General Manager of Special Services for New Castle County. (Compl. at ¶¶ 3, 54) Przywara told Plaintiff that in the future, Plaintiff was to schedule all Local Union business conducted by Plaintiff with Przywara prior to conducting that business; that Plaintiff must inform Przywara the nature of that business; and that Plaintiff was forbidden to be in the Local Union office unless he was first given permission by Przywara. (Id. at ¶ 54). Despite these statements, the Collective Bargaining Agreement between the Local Union and NCC states that the President of the Local Union is permitted to conduct union business by simply informing NCC that he was conducting union business. (Id. at ¶ 55). In other words, the President is not required to tell NCC the nature of the business. (Id.).

In or about early May 2005, Mike Begatto ("Begatto"), Executive Director of AFSCME Council 81, spoke to Coons and Przywara at a dinner party. (Id. at ¶ 56). Coons and Przywara

stated they were going to fire Plaintiff ostensibly over the computer issue. (Id.). However, during that same conversation, Mr. Begatto persuaded them into imposing a twenty-five (25) or thirty (30) day suspension instead of termination. (Id.).

On or about May 11, 2005, Merrit instructed Plaintiff to attend a meeting the next day regarding his punishment for the email situation. (Id. at ¶ 57). Merritt advised him that he must sign the suspension papers that would be presented to him at that meeting or he would be terminated on the spot. (Id.).

On or about May 12, 2005, a meeting was held in which Plaintiff received a thirty (30) day suspension. (Id. at ¶ 58). However, as a condition to receiving this suspension, Plaintiff was required to sign a Memorandum of Understanding prepared by NCC waiving certain rights and agreeing to other untrue representations. (Id. at ¶ 59). Plaintiff, under duress and fearing that he would lose his job of thirty-five (35) years, had no choice but to sign the Memorandum of Understanding. (Id. at ¶ 60). Prior to Plaintiff signing the Memorandum of Understanding, Przywara represented to Plaintiff that any and all other NCC employees who committed the same violation would receive the same punishment. (Id. at ¶ 61). Likewise, the Collective Bargaining Agreement between the Local Union and NCC requires that all employees be treated equally. (Id. at ¶ 62). Plaintiff relied on this representation when executing the Memorandum of Understanding. (Id. at ¶ 63).

While suspended, Plaintiff discovered that others had committed the same offense but were only given five-day suspensions. (Id. at ¶ 64). These suspensions were in direct contravention to Przywara's covenant to treat all violators equally. (Id. at ¶ 65). Furthermore, it was a violation of the Collective Bargaining Agreement. (Id. at ¶ 66).

In fact, the person who sent Plaintiff the donkey email in question, Rich Seery, initially received no suspension or punishment whatsoever. (Id. at ¶ 67). Mr. Seery worked for Coons and was a Coons political supporter. (Id. at ¶ 68). It was not until Plaintiff complained about Seery receiving no discipline to NCC that Seery was eventually suspended. (Id. at ¶ 69). However, Seery received a less severe punishment of only a five (5) day suspension and this suspension did not occur until September 2005. (Id. at ¶ 70). Had Plaintiff not complained to NCC, it is unlikely that Seery would have been disciplined at all. (Id. at ¶ 71).

Plaintiff, upset over the inequity of the punishment that he received in comparison to the other violators, filed a grievance through the Local Union on June 28, 2005. (Id. at ¶ 72). By letter signed by Przywara and dated July 11, 2005, NCC refused to consider Plaintiff's grievance. (Id. at ¶ 73).

NCC terminated Plaintiff from his employment on August 18, 2005, retroactive to July 28, 2005, after thirty-five (35) years of faithful service, ostensibly because Plaintiff attempted to file a grievance. (Id. at ¶ 73 – 74).

## ARGUMENT[3]

### I.   STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Williamson v. Correctional Medical Services, 494 F. Supp.2d 285, 287 (D. Del. 2007). The court must assume that all factual allegations in plaintiffs pleading are true, and draw all reasonable factual inferences in the light most favorable to plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief." Price v. Correctional Medical Services, 493 F.Supp.2d 740, 744 (D. Del. 2007).

### II.   PLAINTIFF HAS NOT WAIVED HIS RIGHT TO BRING THIS LAWSUIT

#### a.   Defendants failed to meet their burden of establishing the validity of the alleged waiver contained in the Memorandum of Understanding under the "totality of the circumstances" test.

Defendants cite to Town of Newton v. Rumery, 480 U.S. 386 (1987) in support of their contention that Mr. Parkston has waived any right to file this lawsuit. Their reliance on this case is misplaced as there are clear distinctions between that case, where the waiver agreement was a valid binding agreement, and the present case where the Memorandum of Understanding is not a valid binding agreement.

---

[3] Plaintiff agrees, pursuant to §II(C) of Defendants' Motion to Dismiss, that Defendants Coons and Przywara should be dismissed from this lawsuit in their official capacities.

First, the defendant in that case, through his attorney, was permitted to negotiate the waiver, Id. at 394, whereas Mr. Parkstone was not permitted to negotiate the terms of the Memorandum of Understanding. (Compl. at ¶¶ 57 – 60). Secondly, the defendant in Rumery had the benefit of an experienced attorney with whom he was able to meet and have all of his alternatives explained to him. 480 U.S. at 390-391. This attorney acted on the defendant's behalf and also actually drafted the agreement on his client's behalf, 480 U.S. at 394. Mr. Parkstone played no part in the drafting of the Memorandum of Understanding as it was drafted completely by Defendants and given to sign by Mr. Parkstone on a take it or leave it basis with no opportunity to consult with an attorney. (Compl. at ¶¶ 57-60).

The defendant in Rumery had three full days to examine and think about whether or not he would execute the waiver. 480 U.S. at 394. Conversely, Mr. Parkstone was required to sign the Memorandum of Understanding at the meeting or be terminated on the spot. (Compl. at 57 - 60). The defendant in Rumery, made no claim that he was under duress at the time the agreement was executed and in fact, signed the agreement voluntarily and with the benefit of counsel. 480 U.S. at 394. Mr. Parkstone, on the other hand, was under duress and had no choice but to sign the agreement. (Compl. at 60). The defendant in Rumery was a sophisticated and experienced business man, 480 U.S. at 394, whereas Mr. Parkstone had worked for the County in the maintenance department for thirty-five years. (Compl. at 5 – 12).

In Rumery, the court noted that the defendant was merely facing charges and was not incarcerated. 480 U.S. 392, 394. In other words, in that case, the punishment was not certain. In the present case on the other hand, Plaintiff had already been "convicted" and was, in fact, facing the punishment of termination on the spot if he did not sign the waiver. This is significant in that the Rumery defendant's options were much more extensive than were Plaintiffs in this case.

14

Finally, in <u>Rumery</u>, there was no allegation that the prosecutor was acting in bad faith in the execution of the waiver with the specific intent of violating the defendant's rights. Here, Mr. Parkstone claims that the execution of the Memorandum of Understanding was one of the retaliatory acts which violated his First Amendment Right to political association. (*See generally*, Compl.). All of the above distinctions render <u>Rumery</u> inapplicable to the instant case. The <u>Rumery</u> Court specifically held that in some cases, "these agreements may infringe important interests ..." 480 U.S. at 392. As such, there is no bright line rule, as Defendants suggest that such waivers are binding on all who sign them.

Instead, in cases wherein an individual has allegedly waived his constitutional or civil rights, the Third Circuit has held that the totality of the circumstances surrounding the execution of the agreement must be analyzed in order to determine whether the execution was knowing and voluntary. <u>Coventry v. United States Steel Corp.</u>, 856 F.2d 448, 451 (3rd Cir. 1988), *see also,* <u>W.B. v. Matula</u>, 67 F.3d 484, 497 (3d Cir. 1995), *abrogated on other grounds by* <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791 (3rd Cir. 2007) and <u>Cole v. Gaming Entertainment, LLC</u>, 199 F. Supp.2d 208, 212 (D. Del. 2002). If the court finds, from examining the totality of the circumstances, that the execution was not knowing and voluntary, then the court must decline to enforce the agreement. <u>Id</u>.

The factors to be considered when applying the totality of the circumstances test are:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact receive benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Roberts v. Comcast Cable Company, 2004 WL 1887487, *4 (D. Del. 2004), *quoting* Moseley v. Bay Ship Mgmt., Inc, 174 F. Supp.2d 192, 197 (D. N.J. 2000). "In addition, general principles of contract construction, specifically the absence of fraud or undue influence, are also applicable in determining the validity of a waiver." Id. at *5, *quoting* Martinez v. Nat'l Broadcasting Co., 877 F. Supp. 219, 227 (D.N.J. 1994).

Here, Defendants have not established that they are entitled to judgment on this issue as it is intensely fact-driven and therefore premature in the present procedural context. Nevertheless, if the Court were to endeavor to look at this issue in the context of the pleadings, it would be hard-pressed to find that Defendants have established that they are entitled to judgment as a matter of law based on the totality of the circumstances.

Specifically: (1) the language of the release is silent in terms of Mr. Parkstone waiving any constitutional rights, (*See* Memorandum of Understanding, attached to Defendants' Opening Brief on Motion to Dismiss); (2) Mr. Parkstone has little business experience in that he worked for New Castle for almost thirty-five years in a maintenance capacity, (Compl. at ¶¶ 7 – 12); (3) Mr. Parkstone was given no time to deliberate about the release before signing it, (Id. at ¶ 57 – 60); (4) Mr. Parkstone, without the benefit of counsel, had no knowledge of his rights upon executing the release; (5) Mr. Parkstone was not encouraged to seek outside counsel before executing the release; (6) the terms were clearly *not* negotiable as the release was drafted prior to the meeting and he was required to sign the release as prepared, (Id. at ¶¶ 57 – 60); and (7) Mr. Parkstone was given no consideration other than that to which he was already entitled via the Collective Bargaining Agreement, (Id. at ¶ 62).[4]

---

[4] This issue is explained more completely in § II(c) of this Answering Brief.

> **b.** **The Memorandum of Understanding is unenforceable against Plaintiff because prior to Plaintiff's filing of his grievance and this lawsuit, Defendants breached that agreement, as well as the Collective Bargaining Agreement, by failing to punish all other employees who committed the same or similar offenses in a like manner.**

During the meeting in which Plaintiff was coerced into signing the Memorandum of Understanding, but prior to his signing that agreement, Defendant Przywara represented to Plaintiff that all who committed the same or similar offenses as Plaintiff would be punished equally and in the same manner. (Id. at ¶ 61 - 62). Plaintiff signed the Memorandum of Understanding based upon this Defendant Przywara's promise. (Id. at ¶ 63).

However, shortly after Plaintiff signed the Memorandum of Understanding, he discovered that Defendants had breached the very promise to him that induced him to sign the Memorandum of Understanding. (Id. at ¶ 64). It was this breach, which occurred prior to Mr. Parkstone filing his grievance, (Id. at ¶ 64, 72), which renders the Memorandum of Understanding unenforceable. "The party first guilty of a material breach of contract cannot complain if the other party subsequently refuses to perform." Eastern Electric and heating, Inc. v. Pike Creek Professional Center, Inc., 1986 WL 9031, *3 (Del. 1986), *quoting* Hudson v. D & V Mason Contractors, Inc. 252 A.2d 166, (Del. Super. 1969). In fact, it was the breach of this promise that was the very basis of Plaintiff's grievance. (Id. at ¶ 64 – 72).

Interestingly, in Defendants' Opening Brief, they state, "Plaintiff received the benefit of continued employment even though his actions warranted termination." (Def.s' Opening Brief at 6). It is ironic indeed that Defendants contend that Plaintiff's actions warranted termination, yet none of the others who forwarded the email were terminated, (Compl.. at ¶ 64, 67), or, upon information and belief, faced the threat of termination, or were required to sign a Memorandum of Understanding, as was the case with Plaintiff.

**c.    The Memorandum of Understanding is void because it was executed by Plaintiff under duress.**

Contracts that are executed under duress are voidable. Halstead v. American Intern. Group Inc., 2005 WL 885200, *2 (D. Del. 2005), *citing* Restatement (Second) of Contracts § 175 (1981). "If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Reiver v. Murdoch & Walsh, P.A., 625 F.Supp. 998, (D. Del. 1985) *quoting*, Restatement (Second) of Contracts § 175(1) (1979). This Court has recognized economic duress as a means of an employee voiding a release. Id.

In the case presently before the Court, Plaintiff had no reasonable alternative other than to sign the release. (Id. at ¶ 60). He was unexpectedly called into the office with less than twenty-four hours notice and informed that if he did not sign the release he would be immediately terminated from his employment of almost thirty-five years. (Id. at ¶ 57 - 59). Plaintiff, then age 52, had no reasonable alternative employment opportunities upon which he could rely if he refused to sign the release. The absence of any reasonable alternative is manifest in Plaintiff's continued unemployment.

Again, it is not this Court's function at this juncture to consider evidence, but to merely determine the sufficiency of the pleading. Here, Plaintiff has sufficiently pled that he was under duress at the time he executed the contract because he feared losing his job. Moreover, Plaintiff has pled that he had no other reasonable alternative than to sign. Therefore, Defendants' Motion should be dismissed based upon the pleading.

**d.    The Memorandum of Understanding is an invalid contract because Defendants were under a pre-existing legal duty to continue Plaintiff's employment.**

Pursuant to "the Delaware pre-existing duty rule, a contract is unenforceable insofar as it calls upon one of the parties to perform a duty which it is already legally obligated to perform." In re Fruehauf Trailer Corp., 250 B.R. 168, 196 (D. Del. 2000). It is a well settled principle that an enforceable contract cannot be based upon a duty which one is already legally obligated to perform." Seidel v. Lee, 954 F.Supp. 810, 817 (D. Del. 1996), *citing* Restatement (Second) of Contracts, §§ 73, 80(2)(1979). "The preexisting duty rule applies not only to a modification of an existing contract but to a duty that is not contractual in nature – that is to say a duty imposed by law." Id. *quoting* Calamari and Perillo, The Law of Contracts, §§ 49(b)(West 1987).

The Collective Bargaining Agreement (CBA) between New Castle County and the Local Union provides that all employees must be treated equally. Moreover, the United States First Amendment to the United States Constitution prohibits Defendants from retaliating or treating their employees unfairly based upon their political affiliation.

In this regard, the Complaint alleges that Defendants treated Plaintiff unfairly as opposed to other employees due to his political association. This unfair treatment is manifest in Defendants' punishment of Plaintiff for the computer incident. But for this unfair treatment, Plaintiff was entitled to continued employment and Defendants were under a duty to continue his employment. As a consequence, Defendants failed to provide any consideration that they were not already under a duty to provide, which makes that document void and unenforceable.

e.     **The Memorandum of Understanding is an illegal contract because it was executed to perpetrate an illegal act, retaliation against Plaintiff for his political affiliation, and therefore is contrary to public policy.**

It is a "well-established principle that an agreement which is contrary to public policy is void and unenforceable." Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1532 (1986), *citing* Restatement (Second) of Contracts § 178 (1981). "[E]even unambiguous contract language can be voided by a contrary public policy. Sexton v. State Farm Fire and Cas. Co., 2003 WL 23274849 (Del. Super. 2003)." Indeed ... Delaware courts have, on rare occasions, voided provisions of contracts or entire contracts when to do otherwise would offend public policy. Id.

Here, the practical effect of the Memorandum of Understanding was to intentionally deny Plaintiff his constitutional right to freedom of political association by coercing him into waiving those rights. Stated differently, the Memorandum of Understanding is a violation of Plaintiff's constitutional rights because it was used, not only to prevent Plaintiff from exercising his constitutional rights, but also as a violation, in and of itself, because Defendants' actions taken in forcing Plaintiff to sign were retaliation for his political association. Unless invalidated, the Memorandum of Understanding will not only have encouraged Defendants to perpetrate a constitutional violation, but will also allow them to escape liability for those actions. If permitted to stand, employers could theoretically require their employees to waive all of their potential claims against their employer in return for employment.

f.     **The Memorandum of Understanding is voidable by Plaintiff as unconscionable because, due to Defendants' substantially superior bargaining power, he was left with no other choice but to sign the agreement.**

Employment restraints should be closely scrutinized by the courts "because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through loss of his livelihood." RHIS Inc. v. Boyce,

2001 WL 1192203, *5 (Del. Ch. 2001). "The special context of an employment contract may be thought to raise special concerns. Employees as a class may be thought to lack bargaining power *vis a vis* their employers and thus the enforcement of a provision shifting legal fees in an employment contract may, at least in some cases, offend the policy of the law that has sought to permit necessitous persons to avoid oppressive bargains that were forced upon them." Research & Trading Corp v. Pfuhl, 1992 WL 345465, *15 (Del. Ch. 1992). While this case does not involve the shifting of legal fees, the suggestion of the case law in this regard indicates that contractual relations between an employer and employee, where the employee gives up rights to the employer, require close scrutiny to prevent oppression by the employer.

Here, the inequality in the respective parties' positions is quite obvious. The Defendants held all the cards, so to speak, and Plaintiff was literally left with no choice but to fold his hand and capitulate to Defendants' demands that he sign the Memorandum of Understanding. (Compl. at 60). The only other alternative was to be immediately terminated. (Id. at 57). In other words, Plaintiff had no reasonable alternative to signing the Memorandum of Understanding. The Defendants, on the other hand, did have reasonable alternatives. To be sure, Defendants did not face the devastating effects that Plaintiff faced if they did not enter into the contract. Simply put, Defendants clearly dictated the terms of this take-it-or-leave-it proposition to Plaintiff and the Memorandum of Understanding must therefore be voidable by Mr. Parkstone.

III.    **PLAINTIFF'S CLAIM FOR INVASION OF PRIVACY SHOULD NOT BE DISMISSED AGAINST DEFENDANTS COONS AND PRYZWARA IN THEIR INDIVIDUAL CAPACITES BECAUSE THEIR ACTIONS WERE CONDUCTED WITH WANTON NEGLIGENCE OR WILLFUL AND MALICIOUS INTENT.**[5]

An "employee" under the County and Municipal Tort Claims Act, 10 Del. C. §§ 4010-4013, is not immune from actions taken that are "performed with wanton negligence or willful and malicious intent." § 4011(c). "An employee's exposure to liability under § 4011(c) is contingent upon the existence of one of two factual imperatives ... the Court must find that the conduct occurred outside the scope of their employment or was committed with wanton negligence or with willful and malicious intent. Farris v. Moeckel, 664 F.Supp. 881, (D. Del. 1987).

Throughout Plaintiff's Complaint it is specifically alleged that Defendants Coons' and Przywara's actions were carried out intentionally, maliciously, wantonly and in retaliation for Plaintiff's political association. (Compl. at ¶¶ 29, 76, 80, 91-92, 95-100 and 102). Moreover, the overriding theme throughout the whole Complaint is that Coons' and Przywara's actions were intentional, wanton, malicious and directly aimed at retaliating against Plaintiff for his political support. As a result, Defendants Coons and Przywara may not be dismissed from this lawsuit in their individual capacities.

---

[5] As is stated above, Plaintiff agrees that Defendants Coons and Przywara are not liable to Plaintiff in their official capacities. Moreover, this Court has held that the Municipal tort Claims Act ("The Act"), 10 Del. C. §§ 4010-4013 is applicable only to governmental employees acting in their individual capacities; despite the language contained in 4010(1) that would lead one to a contrary conclusion. See Holman v. Walls, 1989 WL 66636, *7 (D. Del. 1989). Furthermore, Plaintiff agrees that he has no claim against New Castle County for his Invasion of Privacy claim. Therefore, the argument contained in this section addresses Defendants' argument for dismissal of Plaintiff's Invasion of Privacy claims against Defendants Coons and Przywara in their individual capacities only.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be granted only as to Defendants Coons and Przywara in their official capacities and otherwise denied.

MARTIN & WILSON, P.A.

TIMOTHY J. WILSON (#4323)
JEFFREY K. MARTIN, ESQUIRE (#2407)
1508 Pennsylvania Avenue
Wilmington, Delaware 19806
Telephone: (302) 777-4681
twilson@martinandwilson.com
jmartin@martinandwilson.com
Attorneys for Plaintiff

DATED:  October 9, 2007

23