IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS E. PARKSTONE, III, | : |
|     Plaintiff, | : |
| v. | :   Civil Action No. 07-465-SLR |
| CHRISTOPHER A. COONS, individually and in his official capacity; RICHARD PRZYWARA, individually and in his individual capacity; and NEW CASTLE COUNTY, a municipal corporation, | : |
|     Defendants. | : |

## REPORT AND RECOMMENDATION

This matter arises out of a complaint filed by Dennis E. Parkstone, III ("Parkstone") against Christopher A. Coons ("Coons"), individually and in his official capacity, Richard Przywara ("Przywara"), individually and in his official capacity, and New Castle County (the "County"). Parkstone seeks recovery for: (1) violation of his constitutional right to political association; (2) breach of the implied covenant of good faith and fair dealing; and (3) invasion of privacy. Defendants have moved for summary judgment.

**Statement of Facts**

Parkstone worked as an employee of the County in the position of Crew Chief I within the Department of Special Services. He was an active member of his union, the American Federation of State, County, and Municipal Employees, Local 459 (the "local union") and served as its president. Coons is the County Executive for the County.

Przywara is the General Manager of Special Services for the County.  The County is a political subdivision of the State of Delaware.

Coons announced his intent to run for County Executive while serving as the County Council President.  His opponents in the New Castle County Democratic Primary were Sherry Freebery ("Freebery") and Richard Korn.  Some of Parkstone's coworkers, including Richard Seery ("Seery"), supported Coon's candidacy.  Parkstone supported Freebery's candidacy by making telephone calls for her campaign, urging voters to support Freebery, handing out flyers and erecting signs that promoted Freebery, and transporting voters to and from election polling places on the day of the election.  Parkstone attended a debate between Coons and Freebery, wearing a shirt with the words "Impeach Coons" written across the front.  Parkstone, in his capacity as president of the local union, allowed Freebery to speak at a local union meeting.  Coons later won the primary election.  In the interim between the primary election and the general election, John Carney, then Lieutenant Governor for the State of Delaware, and Tom Baliccio, a coworker of Parkstone, requested that Parkstone permit Coons to speak at the next union meeting.  Parkstone granted the request, and also granted a separate request from Chris Castagno, the Republican candidate for County Executive, to speak at the same meeting.  Coons later won the general election.

In 2003, Parkstone was disciplined by J. Wayne Merritt ("Merritt"), Senior Manager for Special Services, for sending an offensive and sexually explicit email to coworkers on his county email address.  In February 2005, Parkstone received an email on his county email address from Seery, which contained offensive and sexually explicit content.  Parkstone forwarded the email to other coworkers, including Ronnie

Meadowcroft, who then forwarded it to Tammy Evans.  Tammy Evans was offended by its content and complained about the email to Bob Merrill, an Executive Assistant, who in turn informed David Singleton, Chief Administrative Officer.  David Singleton instructed Bob Merrill to investigate the incident.  The investigation revealed that numerous offensive and sexually explicit emails were sent to several coworkers from a computer used by Parkstone located in the local union office.

During that investigation, the County made arrangements with Richard Smallwood, the local union's vice president, to secure the computer used by Parkstone and copy its contents for analysis.[1]  The analysis was conducted in order to identify the number of offensive and sexually explicit emails which Parkstone had sent; to reveal the identity of the persons who initially sent those emails to Parkstone; and, to determine whether Parkstone accessed the internet for sexually suggestive or otherwise inappropriate material.  The analysis revealed that while operating under Parkstone's user identification, the computer had been used to view pornographic pictures and videos, to access a personal American Online account, to prepare personal taxes, and to send numerous offensive and sexually explicit emails.  The investigation further showed that Parkstone either provided his password to other coworkers, failed to secure his computer, or both, because some of the improper activity occurred on dates when Parkstone was not at the local union office.

After the investigation was completed, Parkstone was found to have violated

---

[1] Prior to this action, Gregg Wilson, County Attorney, and Patricia Lutz-Dilenno, Chief of Human Resources, advised Merritt that the seizure and analysis of the computer would be appropriate as long as the County did not access information regarding any local union business.

three different County rules.[2]  Przywara decided to recommend Parkstone's termination because of those violations.  Before making his recommendation to the Chief Human Resources Officer, Przywara was persuaded by several local union officials to impose a lesser punishment.  Przywara and the local union officials negotiated a Memorandum of Understanding ("MOU"), which allowed Parkstone to remain employed on the condition that he not file a grievance or any other legal action with respect to the matter.  Parkstone signed that document on May 12, 2005.

Parkstone later learned that other coworkers also under investigation for sending or receiving offensive and sexually explicit emails were disciplined less severely.[3]  He was particularly upset that Seery, the person who originated the email which caused the investigation, and a supporter of Coon's campaign, had not been punished.[4]  On June 28, 2005, Parkstone filed a grievance.  On July 11, 2005, Przywara notified Parkstone that he waived his right to file a grievance when he signed the MOU.  On August 11, 2005, a pre-termination hearing was held to determine if Parkstone provided mitigating circumstances explaining why he violated the terms of the MOU by filing a grievance.  On August 18, 2005, the Chief Human Resources Officer ruled that Parkstone failed to

---

[2] Parkstone violated Rules 20, 27, and Personnel Policy 4.06, which, in part, concern sexual harassment, by sending offensive and sexually explicit emails from his county email address to coworkers.  He violated Rule 20 and Personnel Policy 4.06, which deal with physical security and system access, by providing his password to other employees or by failing to lock his computer.  He violated Rules 20, 22, 23 and Personnel Policy 4.06, which involve proper computer usage, by using the computer and its internet system to engage in personal business during normal working hours.

[3] One coworker received a twenty day suspension.  Three coworkers, including Seery, received a five day suspension.  Twenty-one coworkers received oral reprimands and were required to attend a counseling session.

[4] Seery's five day suspension occurred in September 2005.

show mitigation and terminated Parkstone's employment, retroactive to June 28, 2005.

Parkstone contends that Coons and Przywara used the power of their offices to retaliate against him for his political support of Freebery in the New Castle County Democratic Primary. In his complaint filed on July 26, 2007, he alleges the following: (I) Count I, violation of his right to political association; (ii) Count II, breach of the implied covenant of good faith and fair dealing; and (iii) Count III, invasion of privacy. The claims against Coons and Przywara in their official capacities were dismissed on January 11, 2008. The court now considers defendants' motion for summary judgment on the remaining claims.

**Standard for Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[5] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7] The moving party is therefore entitled to judgment

---

[5] Fed. R. Civ. P. 56(c).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[7] *Id.* at 323.

show mitigation and terminated Parkstone's employment, retroactive to June 28, 2005.

Parkstone contends that Coons and Przywara used the power of their offices to retaliate against him for his political support of Freebery in the New Castle County Democratic Primary. In his complaint filed on July 26, 2007, he alleges the following: (I) Count I, violation of his right to political association; (ii) Count II, breach of the implied covenant of good faith and fair dealing; and (iii) Count III, invasion of privacy. The claims against Coons and Przywara in their official capacities were dismissed on January 11, 2008. The court now considers defendants' motion for summary judgment on the remaining claims.

**Standard for Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[5] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7] The moving party is therefore entitled to judgment

---

[5] Fed. R. Civ. P. 56(c).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[7] *Id.* at 323.

as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[8] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact.[10] However, a party may move for summary judgment with or without supporting affidavits.[11] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[12]

If the moving party has demonstrated an absence of material fact, then the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial."[13] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[14] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[15] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the

---

[8] *Id.*
[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[10] *Celotex*, 477 U.S. at 323.
[11] *Id.*
[12] *Id.* at 325.
[13] Fed. R. Civ. P. 56(c).
[14] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[15] *Anderson*, 477 U.S. at 248.

matter, but to determine whether there is a genuine issue for trial."[16]  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[17]  The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18]

**Violation of Right to Political Association**

A person may bring a claim under 42 U.S.C. § 1983 if he or she is deprived of any rights, privileges, or immunities secured by the Constitution or by the laws of the United States, and if the "'alleged deprivation was cornmitted by a person acting under color of state law.'"[19]  Under *Monell v. Department of Social Services of the City of New York*, a local governing body may be sued directly under § 1983 for monetary, declaratory, or injunctive relief only where:  (i) "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"; or (ii) the constitutional deprivation was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisonmaking channels."[20]  Such a local governing body, including a county, "may not

---

[16] *Id.* at 249.
[17] *Id.*
[18] *Id.* at 250.
[19] *Cullom v. Boeing, Inc.*, No. 07-234-SLR, 2007 WL 1732097, at *5 (D. Del. June 24, 2007) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).
[20] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978).

be sued pursuant to § 1983 for an injury inflicted solely by its employees or agents."[21] In applying *Monell*, the Third Circuit has explained that "[w]hen a suit is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."[22]

Public agencies "may not constitutionally discharge employees based on their political affiliation when those employees' positions are neither policymaking nor advisory."[23] In order to succeed on a discrimination claim based on political association, an employee first must prove that: (i) he or she works for a public agency in a position that does not require a political affiliation; (ii) he or she maintains an affiliation with a political party; and (iii) his or her political affiliation was a substantial or motivating factor in the adverse employment decision.[24] "Implicit in the third prong is a requirement that the plaintiff produce sufficient evidence that defendant knew of plaintiff's political persuasion."[25] If the plaintiff proves those elements, "the employer 'may avoid a finding of liability by demonstrating by a preponderance of the evidence that it would have made the same decision even in the absence of the protected affiliation.'"[26]

Parkstone's claim under § 1983 alleges that defendants, while acting under the

---

[21] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 415 (1997). The term "municipalities" as used in the applicable Supreme Court holdings includes counties. *Id.* (applying *Monell* test to suit brought against county).
[22] *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d. Cir. 1996).
[23] *Goodman v. Pennsylvania Turnpike Com'n*, 293 F.3d 655, 663 (3d Cir. 2002).
[24] *Id.* at 663-64.
[25] *Id.* at 664.
[26] *Id.* (quoting *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995)).

color of state law, violated his constitutional right to political association. Parkstone contends that his political association was a substantial or motivating factor in defendants' decision to punish him more severely relative to his coworkers and their decision to terminate his employment. Defendants do not contest that Parkstone worked for a public agency in a position that does not require a political affiliation or that he maintained an affiliation with a particular party or particular political candidates. However, defendants maintain that Parkstone's political associations were not substantial or motivating factors for the discipline proscribed and for his termination.

Parkstone does not allege or present any evidence that the alleged violation of his constitutional right occurred because of the implementation or execution of a County policy statement, ordinance, regulation, or officially adopted decision. He does not claim or proffer facts demonstrating that the alleged constitutional deprivation was visited pursuant to some governmental custom. Parkstone contends that he angered Coons by supporting Freebery during the New Castle County Democratic Primary, and that Coons and Przywara retaliated against him. Even if these allegations were true and supported by the evidence, a local governing body, such as the County, may not be sued pursuant to § 1983 for an injury inflicted solely by its employees or agents. Therefore, Parkstone has failed to show any facts demonstrating that the County may be held liable under § 1983.

Parkstone has not shown that defendants knew of his political affiliation. Parkstone's support of Freebery was not obvious. He had no title on the Freebery campaign, was not employed by that campaign, and did no campaigning while at work. Coons affirmed that he does not remember seeing Parkstone at any rallies, debates, or

other political events and that he had no knowledge of Parkstone's individual support for Freebery. Parkstone does not assert that either Coons or Przywara ever discussed the campaign with him. Parkstone argues that his support for Freebery was common knowledge in the county offices, but he does not produce any evidence, such as an affidavit or deposition from a coworker, so confirming. He admits that when he erected signs or talked to others about his support for Freebery, he never encountered Coons or Przywara. In his deposition, Parkstone did not remember any incident where Coons or Przywara witnessed his support for Freebery. In his affidavit filed in response to the defense's motion, however, he recalled wearing an "Impeach Coons" shirt to a debate between Coons and Freebery where, according the Parkstone, there was "no possible way that Mr. Coons did not see me at this event."[27]

Even if defendants knew of Parkstone's political affiliation, he has not demonstrated that his affiliation was a substantial or motivating factor in his punishment and termination. Parkstone conceded in his deposition that there is no evidence that he would not have been terminated but for his political affiliation. He admitted that the investigation initiated from a complaint filed by a coworker who was offended by the inappropriate and sexually explicit email which he sent from his county email address.

Parkstone presents nothing which directly or indirectly proves Coons'

---

[27] Defendants posit that this is a sham affidavit, and accordingly, it should be disregarded by the court. Under the sham affidavit doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Bear v. Chase*, 392 F.3d 609, 624 (3d Cir. 2007). Because the contents of the affidavit, even if accepted as true, neither create a material issue of fact nor change the recommendation, the court does not consider whether his declaration is a sham affidavit.

involvement in the investigation or termination. Coons states that he did not participate in, control, or give any orders with respect to the investigation. Coons similarly denies having any participation, control, or direction in the decision to discipline Parkstone or to terminate his employment. Also, Parkstone does not discern any facts suggesting that Przywara had knowledge of Parkstone's political affiliation; that his affiliation was a substantial or motivating factor in Przywara's decisions regarding Parkstone's discipline and termination; or that Przywara otherwise acted improperly. In fact, the record indicates that Przywara, upon the request of local union representatives, recommended a lesser punishment for Parkstone than he had initially contemplated.

Parkstone largely relies on the following: Seery, a coworker who supported Coons, was punished several months after Parkstone's discipline; Seery's punishment occurred after Parkstone filed a grievance regarding the disparity; Seery originated the offensive and sexually explicit email; and, Seery's discipline was less severe. Defendants explain the factors that they considered for different employees and the decision that Parkstone's behavior warranted more severe discipline relative to that of his coworkers because "the nature of the offenses required separate levels of discipline."[28] That Parkstone's and Seery's discipline did not occur simultaneously is

---

[28] The severity of the discipline was based upon the number of violations with which an employee was charged, along with the number of inappropriate and sexually explicit emails that were forwarded to other County employees; whether the employee had previously been counseled regarding the nature of inappropriate and sexually explicit emails; and whether the employee failed to report receipt of inappropriate emails, thereby allowing the continued dissemination of those types of emails. The severity of the discipline imposed on Parkstone was chosen because he sent a large number of inappropriate and sexually explicit emails; he previously had been counseled for sending an email of a similarly offensive nature; and, he allowed access to adult and pornographic websites on his computer by providing his password to others, by failing

insufficient to show that there were political motivations behind Parkstone's discipline and termination. Further, Parker offers no evidence which suggests that Seery's political affiliation resulted in preferential treatment. Therefore, Parkstone has not demonstrated that his political affiliation was a substantial or motivating factor in his discipline and termination.

**Breach of Implied Covenant of Good Faith and Fair Dealing**

The covenant of good faith and fair dealing "permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal."[29] Instances where the covenant is violated include when the employee's termination violates public policy;[30] the employer misrepresents "some important fact, most often the employer's present intentions, and the employee relies thereon either to accept a new position or remain in a present one";[31] the employer uses its superior bargaining power to deprive the employee "of 'compensation that is clearly identifiable and is related to the employee's past service'";[32] or, the employer falsifies or manipulates a record "to create fictitious grounds to terminate employment."[33]

Parkstone brings a common law claim for breach of the implied covenant of good faith and fair dealing pursuant to the supplemental jurisdiction of the court created by

---

to lock his computer, or both.
[29] *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 437 (Del. Super. 1996).
[30] *Id.* at 441.
[31] *Id.* at 442.
[32] *Id.* (quoting *Magan v. Anaconda Industries, Inc.*, 479 A.2d 781 (Conn. 1984)).
[33] *Id.* at 443-44.

his § 1983 claim. He alleges that defendants breached the covenant by terminating him in retaliation for his political association. As evidence of the breach, Parkstone points to the severity of his discipline when compared to other coworkers. As noted previously herein, defendants outline the analysis that they applied to determine the appropriate discipline for employees based on the nature of the offenses and the severity of the conduct. Under that review, Parkstone's behavior warranted more severe discipline compared to his coworkers.[34] Parkstone does not contend that the multi-factor analysis was flawed or unfair. He does not present any evidence suggesting that the actions of other coworkers were as egregious as his conduct. Further, he fails to articulate whether or how the multi-factor analysis supports that he was unjustifiably given harsher punishment relative to his coworkers.

Defendants also rely on Parkstone's violation of the MOU as a basis for his termination. According to the MOU, which Parkstone signed on May 12, 2005, he specifically agreed "not to file a grievance or any other legal action with respect to this matter." Within six weeks after his execution of the MOU, he initiated a grievance regarding his discipline.[35] Parkstone does not deny that he signed the MOU or that he filed the grievance.[36] Based on those facts and the lack of any supporting evidence,

---

[34] *See* n. 24.

[35] Parkstone filed his grievance on June 28, 2005.

[36] Parkstone argues that the MOU is void and unenforceable. Even if the court were to accept his arguments, Parkstone does not discern evidence showing that his discipline and termination resulted from any deceitful or bad faith behavior by defendants, as is necessary to survive a motion for summary judgment on his claim. Parkstone does not explain how, even in the absence of the MOU, it would have been impermissible for defendants to terminate Parkstone's employment because of his misconduct in violation of County rules and procedures. Because the recommendation herein dismisses the § 1983 claim, in the absence of that sole federal question raised

Parkstone has failed to prove that defendants were deceitful or acted in bad faith in disciplining him or in terminating his employment.

**Invasion of Privacy**

There are four variations of the tort of invasion of privacy under Delaware law: "(1) intrusion on plaintiff's physical solitude; (2) publication of private matters violating the ordinary senses; (3) putting plaintiff in a false position in the public eye; and (4) appropriation of some element of plaintiff's personality for commercial use."[37] An intrusion on a plaintiff's physical solitude occurs if one "'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'"[38]

A state law claim for invasion of privacy may be barred by the County and Municipal Claims Act (the "Act").[39] The Act states that, "[e]xcept as otherwise expressly provided by statute, all government entities and their employees shall be immune from suit on any and all tort claims seeking recover of damages."[40] Governmental entities include "any municipality, town, county, administrative entity or instrumentality . . . ."[41] Employees include "a person acting on behalf of the governmental entity in any official capacity . . . including elected or appointed officials . . . ."[42] The Act provides exceptions

---

by Parkstone, under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. Accordingly, the court refrains from further considering this issue.

[37] *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992).
[38] *Id.* (quoting Restatement (Second) of Torts § 652B).
[39] 10 *Del. C.* § 4010-13.
[40] 10 *Del. C.* § 4011(a).
[41] 10 *Del. C.* § 4010(2).
[42] 10 *Del. C.* § 4010(1).

to immunity only where the acts or omissions cause property damage, bodily injury or death.[43] Even when this occurs, employees are only liable "for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent."[44]

Parkstone brings a common law claim for invasion of privacy pursuant to the supplemental jurisdiction of the court created by his § 1983 claim. However, he produces no evidence that the computer was not the property of the County. He relies solely on the unsupported assertion in his complaint that the computer was property of the local union. The County maintains that it owns the computer. The facts contained in the record show that the computer was located in the local union office, which suggests that the local union had some control over its use. Therefore, it is not entirely clear whether the computer was owned by the County or the local union. It is fully evident, however, that County also had control over the computer. Each time Parkstone signed on to the computer, he was required to click a box acknowledging that the computer system could be monitored by the County. Moreover, he was required to follow the policies and procedures of the County regarding its use. Parkstone concedes that he clicked a box every time when he logged onto the computer, but now professes to have forgotten the content of that acknowledgment.

Despite such unrefuted evidence, Parkstone argues that the County's acts constituted an intrusion into his private affairs which would highly offend a reasonable

---

[43] 10 *Del. C.* § 4011(c), 4012. The term "property damage" as used in the Act does not include economic harm alone. *Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. Super. 1997).

[44] 10 *Del. C.* § 4011(c).

person.  Apart from his unsupported allegations in the complaint, Parkstone produces nothing which suggests that the County did not own the computer.  Even if the local union owned the computer, the facts in the record show that the County had control over the computer and that Parkstone routinely consented to its control.  There is clearly no evidence that Parkstone owned or controlled the computer from which an expectation of privacy could arise.  Therefore, Parkstone fails to show that defendants' actions of inspecting the computer breached an expectation of privacy and constituted an intrusion in his private affairs.

Moreover, Parkstone produces no evidence suggesting that defendants are not entitled to immunity under the Act.  The County is a government entity and Coons and Przywara are its employees, as defined under the Act.  Absent an applicable exception, they are entitled to immunity from suit.  Parkstone does not allege that defendants' conduct caused bodily injury or death, and economic damage alone does not constitute property damage under the Act.  Further, with respect to the claims against Coons and Przywara, Parkstone proffered no facts showing that they acted beyond the scope of their employment, or alternatively, with wanton negligence or willful or malicious intent.  Therefore, Parkstone fails to demonstrate that any exception to the immunity granted by the Act to defendants is applicable.

Based on these findings, Parkstone has failed to show how defendants' actions constituted an intrusion into his private affairs or why they are not entitled to immunity from suit under the Act.  Therefore, his claim for invasion of privacy fails.

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[45] "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"[46] In the Third Circuit, there is "no rigid procedure that courts must follow in determining whether qualified immunity is warranted[,]"[47] which reflects the recent decision by the Supreme Court in *Pearson v. Callahan* that granted lower courts more flexibility in determining the applicability of qualified immunity to government officials.[48] The court may, but is not required, to consider whether the individual government official violated a constitutional right, and if so, whether the right was clearly established at the time of the defendant's conduct, such that a reasonable official would have known it.[49]

In the one decision pertaining to qualified immunity that the Third Circuit rendered since *Pearson*, the court first considered whether defendants acted in

---

[45] *Pearson v. Callahan*, 55 U.S. --, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[46] *Pearson*, 129 S. Ct. at 815 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

[47] *Bumgarner v. Bumgarner*, No. 08-1724, 2009 WL 567227, at *3 (3d Cir. Mar. 06, 2009) (citing *Pearson*, 129 S. Ct. 808).

[48] In defendants' brief, they cite the two-step analysis which the Supreme Court established in *Saucier v. Katz* for determining whether a governmental official is entitled to qualified immunity. That analysis was the correct statement of the law at the time of their submission. Subsequently, however, the Supreme Court held in *Pearson v. Callahan* that the *Saucier* analysis is no longer mandatory by holding that its recent decision "does not prevent lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." 129 S. Ct. at 815, 821.

[49] *Pearson*, 129 S. Ct. 808.

violation of clearly established law.[50] The court asked "whether the law was so clearly established that the Officer Defendant's conduct would have appeared unlawful to an objectively reasonable officer."[51] After determining that the defendants' acts did not violate a clearly established law, the court held that they were entitled to qualified immunity and refrained from considering whether there was a constitutional violation under the particular facts presented.[52]

Coons and Przywara claim that, as government officials, they are entitled to qualified immunity. Parksone alleges that Coons and Przywara violated his right to political association. As previously discussed herein, however, Parkstone has produced no evidence showing that Coons was involved at all in the direction of the investigation, the process of determining Parkstone's discipline, or in the decision to terminate his employment. Parkstone does not proffer any facts which demonstrate that either Coons or Przywara were motivated to retaliate against Parkstone for his political affiliation, or that they in any way violated a clearly established constitutional right. Further, there is no evidence showing that a constitutional violation occurred at all. In the absence of such evidence, Coons and Przywara are entitled to qualified immunity.

**Conclusion**

As a result of the findings herein, Parkstone fails to establish the existence of elements essential to his case with respect to the alleged infringement on his right to

---

[50] *Bumgarner*, No. 08-1724, 2009 WL 567227, at *3.
[51] *Id.*
[52] *Id.* at *4.

18

political association, the purported breach of the implied covenant of good faith and fair dealing, and the claimed invasion of his privacy. Summary judgment is appropriate where, as in this matter, Parkstone, who has the burden of proof, has presented no facts, which, when viewed in a light most favorable to him, would allow a jury to find in his favor. In the absence of any genuine issue as to any material fact, as a matter of law his claim cannot succeed.

Because the court recommends that defendants' motion for summary judgment be granted on the issues analyzed herein and specifically on the federal claim, it need not address the issues related to whether, by signing the MOU, Parkstone waived his right to sue.

## ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) Defendants' motion for summary judgment be granted pertaining to the violation of Parkstone's constitutional right to political association under 42 U.S.C. § 1983;

(2) Defendants' motion for summary judgment be granted as to breach of the implied covenant of good faith and fair dealing;

(3) Defendants' motion for summary judgment be granted with respect to Parkstone's claim for invasion of privacy;

(4) Defendants' motion for summary judgment based on the County and Municipal Claims Act, 10 *Del. C.* § 4010 et. seq. be granted;

(5) Defendants' motion for summary judgment based on qualified immunity be granted.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov.


Dated:  April 20, 2009                                         /s/ Mary Pat Thynge
                                                                              UNITED STATES MAGISTRATE JUDGE